Rafael G. del Castillo                    6909-0
rafa.atty@gmail.com
Jouxson-Meyers & del Castillo
Attorneys at Law, a Limited Liability Law Company
289 Kawaihae Street No. 222
Honolulu, Hawai`i 96825
Telephone:  808-782-1262
Facsimile:  866-528-8371 (toll free)

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RICHARD DICRESCENZO<br><br>        Plaintiff,<br><br>    vs.<br><br>UNITEDHEALTH GROUP INCORPORATED, UNITEDHEALTHCARE, INC., UNITEDHEALTHCARE INSURANCE COMPANY, and JOHN DOES 1-99; JANE DOES 1-99; DOE ENTITIES 1-20; and DOE GOVERNMENTAL UNITS 1-10<br><br>        Defendants.<br>_____ | CIVIL NO. CV 15-21<br>(Civil Rights)<br><br><br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR COMPENSATORY AND PUNITIVE DAMAGES; JURY TRIAL DEMAND ENDORSEMENT; SUMMONS |

**COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF,
AND FOR COMPENSATORY AND PUNITIVE DAMAGES**

## I.      INTRODUCTION

1.      This is a Title III, Americans With Disabilities Act, discrimination

and civil rights action with pendant bad faith and state tort claims for

compensatory and punitive damages against Defendants UnitedHealth Group

Incorporated (hereafter, "UHG"), UnitedHealthcare, Inc. (hereafter "UHI"),

UnitedHealthcare Insurance Company  (hereafter, "UHC") (collectively, "United

Defendants"), and John Does 1-99; Jane Does 1-99; Doe Entities 1-20; and Doe

Governmental Units 1-10 ("Doe Defendants") (collectively, "Defendants").

2.     Defendants discriminated against Plaintiff Richard DiCrescenzo in the

State of Hawai`i's QUEST Expanded Access Medicaid program **continuously**

from September 2011 to the present with the utmost bad faith on account of

Plaintiff's disability in denying him equal enjoyment of the goods, services,

facilities, privileges, advantages, and covered benefits to which he had legitimate

claims of entitlement, and deliberately and intentionally subjecting him to

inescapably unsafe and dangerous circumstances with evident indifference to the

potential that he would suffer physical harm or even death.

3.     The discrimination which is the subject of Plaintiff's Complaint

occurred not as part of Defendants' Plan design, which must comply with

Hawai`i's statutory medical necessity requirements codified at Haw. Rev. Stat. §

432E-1.4 in arranging for medical assistance for Plaintiff, but as a result of

discriminatory choices in how the benefits were administered, changes in which do

not involve a "fundamental alteration" of the United Defendants' plan itself,

despite repeated efforts on Plaintiff's part and that of his counsel to reach a

resolution without resort to filing this Complaint in Federal Court,.

4.     Defendants' discriminatory conduct and deprivation of benefits unlawfully and unjustifiably segregated Plaintiff and prevented him from achieving the level of integration into the community of which he is capable, subjecting him to unequal treatment by arbitrarily and wrongfully imposing an unnecessary and extreme delay in arranging for benefits to which he was unquestionably entitled, and causing him to suffer extreme emotional distress, embarrassment, frustration, deterioration of physical function and mobility, and despair for over three years.

5.     Defendants left Plaintiff no alternative but to reallocate funds he needed to pay his basic living expenses, such as food, rent, medically necessary medication, and to borrow from friends and family, to hire personal assistants for the absolute minimum of the services he needed to manage daily life safely for months at a time.

6.     Defendants resolutely refused to arrange for the 13 hours per week of personal assistant services which were medically necessary for Plaintiff until he sought the services of an attorney to assist and advocate on his behalf with Defendants.

7.     It is a violation of Hawaii State insurance code for Defendants to compel Plaintiff to institute litigation to recover amounts due under his health insurance.

## PARTIES

8.     At all relevant times herein, Plaintiff Richard DiCrescenzo is a resident of the Island of Oahu, Hawai`i.  He has lived variously in Honolulu and Pearl City/Aiea and presently resides in Pearl City.

9.     Plaintiff was hit in 1979 by a drunk driver with such force that his car was completely destroyed, as a result of which Plaintiff suffered grievous injuries, including severe traumatic brain injury which rendered him fragile and left him struggling every day since his release from hospital and lengthy inpatient rehabilitation with chronic cognitive deficits.

10.     Plaintiff has, since the crash in 1979, been deemed to be fully disabled under the meaning of 29 U.S.C. § 705, 42 U.S. Code § 12102, and 42 U.S.C. §§ 416, 421.

11.     Plaintiff is eligible for coverage under Medicare and the State of Hawai`i's Medicaid Plan, as defined in 42 U.S.C. § 1396u-2(a)(2)(B) (beneficiaries who are eligible for services under both the Medicaid and Medicare programs, commonly referred to as "dual eligibles").

12.     On information and belief, UHC and UHI are operating divisions of UHG, which describes itself as "the largest single health carrier in the United States. . . ." with offices at 841 Bishop St #725, Honolulu, Hawai`i 96813.

13.     United Defendants have done business in Hawai`i since February

4

2009 under various pseudonyms/trade names, including "Evercare,"

"SecureHorizons," and "United Community Plan."

14.    The United Defendants' self-descriptions are all about numbers: insuring "approximately 70 million Americans"; providing drugs and medication to "over 13 million Americans"; "serving over 3 million people in Medicaid, Medicare Special Needs Plans, and Children's Health Insurance Programs," as "the country's largest Medicaid managed care organization"; and contracting with "768,471 physicians and health care professionals, 80,000 dentists and 5,675 hospitals. . . ." for medical services.

15.    The United Defendants' grand self-descriptions omit they have paid millions of dollars in fines to settle a number of Federal and state government actions, including actions by the State of Hawaii, for various fraudulent acts against consumers and the various government agencies, and for violations of insurance and Medicaid statutes.

16.    Since February 2009, United Defendants have been contracted by the State of Hawai`i under its waiver authority as a Medicaid Managed Care Organization to provide or arrange medical assistance for aged, blind, and disabled Medicaid beneficiaries and Medicare-Medicaid ("dual eligible") beneficiaries also enrolled in the United Defendants' Medicare Advantage plan.

17.    United Defendants are agents of the State of Hawaii Department of

Human Services and its Med-QUEST Division, the sole agency responsible for Medicaid Title XIX medical assistance programs in Hawaii.

18.     Under the Affordable Care Act, Congress provided increased the requirements and facilitative measures for coordinating care for dual eligible beneficiaries.

19.     The Federal Government furthermore contracted with the United Defendants to provide medical assistance to Medicare beneficiaries enrolled in United Defendants' Medicare Advantage program, fka "SecureHorizons," substituting the MA coverage for their regular Medicare coverage.

20.     Medicare Advantage plans are monitored and directly controlled by the Centers for Medicare and Medicaid Services, including, among other variables, disenrollment procedures and premium adjustments.

21.     Accordingly, Defendants were, at all relevant times herein, acting under color of state and federal law in arranging, or failing to arrange, medical assistance for Plaintiff and all other dual eligible individuals enrolled in the United Defendants' plans operated in the State of Hawai`i.

22.     On information and belief, at all relevant times herein United Defendants combined their Medicare Advantage Plan, fka "SecureHorizons," with their State of Hawaii Medicaid Managed Care Plan to arrange for medical assistance for the dual eligible aged, blind, and disabled beneficiaries assigned to

them, to meet, for all intents and purposes, the requirements of a Special Needs

Plan for dual-eligible beneficiaries of Medicare and Medicaid, pursuant to the

Social Security Act, the Medicaid Act, and the Affordable Care Act of 2008, to

prevent discrimination in benefits against dual eligible beneficiaries compared with

the promptness and completeness with which benefits are provided to all other

Medicaid beneficiaries in the State of Hawai`i, and to otherwise supposedly ensure

prompt, efficient, and effective coordination of Medicare and Medicaid benefits.

23.     Defendants John Does 1-99, Jane Does 1-99, Doe Entities 1-20, and

Doe Governmental Units 1-10 (collectively "Doe Defendants") are sued herein

under fictitious names for the reasons that their true names and identities are

presently unknown to Plaintiff except that they are connected in some manner with

United Defendants, or were the agents, principals, officers, directors, servants,

employees, employers, representatives, insurers, co-insurers, associates,

consultants, assignees, assignors, licensees, licensors of United Defendants or

were, in some manner presently unknown to Plaintiff, engaged in the activities

alleged herein or were in some manner responsible for the injuries or damages to

Plaintiff in a manner which was the proximate cause of injuries or damages to

Plaintiff, or were in some manner related to the United Defendants, and through or

by virtue of such relationship were liable to Plaintiff on the claims herein alleged,

and Plaintiff prays for relief to certify the true names, identities, capacities,

activities or responsibilities of the Defendants fictitiously named herein when the same are discovered or ascertained.

24.    Upon information and belief, Defendants' actions alleged in this Complaint arose from Defendants' customs, policies, and practices which, in relevant part violated their contracts with the Federal and State governments, Federal and State anti-discrimination laws, and Hawaii Insurance Code.

## JURISDICTION AND VENUE

25.    Plaintiff's claims concern an actual controversy, and therefore this Court has jurisdiction of Plaintiff's action under Title III of the ADA, 42 U.S.C. §§ 12181-12189, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and 28 U.S.C. §§ 1331 and 1343; and may grant the declaratory relief Plaintiff seeks pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202, and the injunctive relief and compensatory damages Plaintiff seeks under 42 U.S.C. §§ 1983 and 1988, and Title XIX of the Social Security Act and applicable regulations.

26.    Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's related State law claims for violations of Chapter 489, Haw. Rev. Stat. (Hawaii's non-discrimination in public accommodations statute based upon the Americans With Disabilities Act), to declare compliance with and violations of Hawai`i's medical necessity statute, Haw. Rev. Stat. § 432E-1.4 and Hawai`i's

8

unfair competition insurance law, Haw. Rev. Stat. § 431:13-103(a), violations of

Hawaii's the tort of bad faith, negligent infliction of emotional distress, intentional

infliction of emotional distress, and punitive damages, which arise from the same

factual circumstances, events and transactions.

27.     Venue is proper under 28 U.S.C. § 1391 because Plaintiff resides in

the District of Hawai`i, and a substantial part of all omissions, unlawful conduct,

incidents, events, and occurrences giving rise to this action occurred in the District

of Hawai`i.

## FACTUAL BACKGROUND

28.     Under authority of section 1396u-2(a) of Title 42 of the U.S. Code,

entitled "(a) State option to use managed care. . ." the State of Hawai`i obtained a

waiver from the Secretary, U.S. Department of Health and Human Services,

pursuant to 42 U.S.C. § 1315, to arrange for medical assistance for all Medicaid

beneficiaries through private contractors.

29.     Section 1315(a) authorizes statutory waivers for "experimental, pilot

or demonstration projects" under Titles I, X, XIV, XIX and Parts A or D of Title

IV of the Social Security Act.  Regarding the Medicaid statute (Title XIX),

§ 1315(a)(1) authorizes "waiv[ers] [of] compliance with any of the requirements of

section…1902" (codified at 42 U.S.C. § 1396a(a)).

30.     Prior to February 2009, the State of Hawaii contracted with managed

care plans to provide or arrange for medical assistance for the majority of the

population eligible for Medicaid medical assistance under Hawaii's State Plan,

excluding the eligible beneficiaries who were aged, blind, or disabled under the

meaning of 42 U.S.C. § 1396u-2(a)(2)(A) and (B).  The State of Hawaii arranged

for medical assistance for those eligible beneficiaries who were aged, blind, or

disabled on a fee-for-service basis, contracting directly with the providers of

services.

31.    The State of Hawaii arranged for medical assistance for Plaintiff

which was covered under the Hawaii State Medicaid Plan during the years prior to

February 2009, including arranging for personal assistant services to support

Plaintiff's integration into the community by assisting him with maintaining a

hygienic apartment and traveling on The Bus to the market and the pharmacy for

food, supplies, and medication, ensuring that Plaintiff arrived safely at his

destination and home again without becoming disoriented and lost or forgetting his

errands.

32.    The Secretary, DHHS, granted the State of Hawaii a waiver to

contract with managed care contractors to arrange for or provide medical

assistance to the eligible beneficiaries who were aged, blind, or disabled, and the

Department contracted with United Defendants to begin arranging for medical

assistance in February 2009.

33.     The United Defendants' State of Hawai`i contract mandates compliance with all Federal and State laws and regulations in arranging for medical assistance, including, but not limited to, Section 504 of the Rehabilitation Act of 1973, Section 1557 of the Patient Protection and Affordable Care Act (42 U.S.C. 18116), Titles XIX and XX of the Social Security Act, including particularly sections 42 U.S.C. § 1396a and 1396d of Medicaid law, and Title III of the Americans with Disabilities Act of 1990.

34.     The State of Hawai`i also prohibited any activities by Defendants suggesting to QUEST Expanded Access dual eligible enrollees that they were required to enroll with the United Defendants' Medicare Advantage plan to receive their full benefits.

35.     Over half of the funding for the QUEST Expanded Access Program is provided by the Federal Government under a statutory arrangement to share the costs which Congress enacted to fund state Medicaid programs.

36.     By contract and in actual practice, the Medicaid Managed Care Organizations with which the aged, blind, and disabled Medicaid beneficiaries and dual eligible are enrolled in QUEST Expanded Access are supposedly monitored continuously by the State of Hawai`i, including the eligibility determinations, assignment of new enrollees, reassignment of enrollees, carrying on independent utilization reviews, setting and monitoring quality standards and policies,

11

overseeing disenrollment and transfer procedures, determining the price paid for premiums to the Medicaid Managed Care Organizations under the contract and premium adjustments, monitoring medical loss ratios, and overseeing actuarial determinations.

37.    Since his grievous injury, Plaintiff is and has resolutely endeavored to live as independently in the community as possible with his disabilities.

38.    Plaintiff lives alone in a small apartment.

39.    On account of his traumatic brain injury and physical injuries, Plaintiff fatigues easily and is physically weak.

40.    Plaintiff suffers from difficulty with attention, concentration, comprehension, and especially short-term, verbal memory.

41.    Plaintiff is unable to consistently employ most traumatic brain injury coping mechanisms such as a diary, rehearsal, review, or a tape recorder due to the seriousness and nature of his injury, and his capacity to remember "new" information depends upon many variables including the complexity and topic of the information, the seriousness of his brain-injury induced chronic fatigue and depression at the time, the external environment, and his medications.

42.    Plaintiff's traumatic brain injury also causes significant and irremediable problems with memory, causing him, from time-to-time and unpredictably, to forget

   a. the date,

   b. whether he has taken his daily medications or which medications he has taken, or the quantity he has taken,

   c. if he is away from his small apartment, where he is or how he got there, causing him to become lost,

   d. whether he has food in the house, or, among other things,

   e. what food and supplies he needs once he has gotten to the store with his small disability stipend.

43.   Plaintiff must have personal assistant services to maintain a safe and hygienic environment, consistent adequate nutrition, and to arrive on time, at the correct address, and on the correct date for all of his medical care appointments.

44.   For a number of years prior to February 2009, Plaintiff was provided, under the Department's "fee-for-service" program, services which the Department had correctly determined where the minimum medically necessary services Plaintiff required for his personal safety, and to maintain his independence and be fully integrated into society, including

   a. skilled nursing services for medication management, and

   b. personal assistants and to assist him with

      i. maintaining his apartment in a hygienic state, and

      ii. escorting him to the pharmacy, the grocery store, and doctor's

appointments.

45.     Following Plaintiff's enrollment with the United Defendants in QUEST Expanded Access, they continued providing Plaintiff with personal assistant services after February 2009 consistent with the services Plaintiff had been provided under the State's fee-for-service program.

46.     Soon after Plaintiff was enrolled with United Defendants QUEST Expanded Access Plan, Defendants persuaded Plaintiff to enroll with United's Medicare Advantage Plan as the Medicare component of his Medicaid/Medicare coverage, falsely representing that he would enjoy comprehensive care and better service with United Defendants than if he maintained his enrollment with Medicare for his Medicare coverage.

47.     Subsequent to his assignment to the United Defendants as a Medicaid beneficiary, Plaintiff suffered a second traumatic brain injury while riding The Bus on June 7, 2010, which worsened his functional disabilities, and further compromised his ability to shop for groceries without assistance, to cook, clean, launder his clothing and bedding, and keep track of medical appointments and finances.

48.     Plaintiff nonetheless was and is determined to live on his own in the community, and his treating providers concur with Plaintiff's determination to remain independent in the community with the support of personal assistance and

nursing services for his medication management

49.    Plaintiff's treating providers have repeatedly ordered that he receive the minimal assistance of 13 hours per week of "Personal assistance services - Level I," which is a covered benefit under the State of Hawaii's Medicaid Plan and its QUEST Expanded Access Program.

50.    United Defendants expressly guaranteed in executing the contract with the State that all of the members enrolled with United Defendants who had been diagnosed with traumatic brain injury, including Plaintiff, would continue to have access to Personal assistance services - Level I and all other medically necessary primary, acute and long-term care services, including among other essentials, assisted living services, attendant care, counseling and training, environmental accessibility adaptations, home delivered meals, home maintenance, medically fragile day care, non-medical transportation, personal assistance services - Level II, and private duty nursing.

51.    United Defendants provided the 13 hours per week of Personal assistance services, Level I, until September 2011 when Defendants terminated the coverage, despite the fact that Plaintiff was at all times enrolled with United Defendants for Medicaid and Medicare, and despite the fact that Plaintiffs' condition and disabilities did not spontaneously improve, or for any other known reason or cause other than the fact that Plaintiff was vulnerable and United

Defendants assumed he would be unable to protest effectively or advocate successfully on his own behalf for the restoration of the medically necessary services.

52.    Plaintiff's permanent brain injury disabilities make it easy for people to take advantage of him, and that is precisely what Defendants have done repeatedly since September 2011.

53.    There has never been any reason for Defendants to believe that Plaintiff's disability was expected to improve once he was discharged from inpatient rehabilitation and, in fact, it has not improved.

54.    Plaintiff's functional abilities did not improve after United Defendants contracted with the State of Hawaii to arrange for the Personal assistance services - Level I.  These were facts known to Defendants from Plaintiff's medical records and reports and thus there was no basis for terminating his services.

55.    Despite the fact that any change in Plaintiff's condition after United Defendants began arranging for Personal assistance services - Level I was for the worse, not for the better, Defendants completely and unjustifiably denied Plaintiff coverage of those services, refusing to cover and provide the services during the period from September 2011 until April 20, 2012, thereby leaving Plaintiff no choice but to reallocate funds he needed to pay his basic living expenses and for his medication to pay caregivers, and to borrow from friends and family, for the

absolute minimum of the services he needed to survive.

56.     Plaintiff was left without consistent medication management and fended largely for himself in that respect.

57.     Plaintiff had to curtail his activities in the community, shopping for food and supplies, accessing the pharmacy for his medication, and appearing for appointments with his treating providers.

58.     Plaintiff became lost or disoriented, or both, from time to time in the community in attempting to carry on his activities.

59.     Plaintiff has consistently made the most courageous effort to do as much as he possibly can for himself, and thus has sought from Defendants only the relatively minimal coverage of the 13 hours per week of Personal assistance services - Level I he was receiving prior to February 2009.

60.     Plaintiff and his treating physicians repeatedly pleaded with the "service coordinator" Defendants assigned to him, a case worker supposedly assigned to "assist" him with accessing benefits, but Defendants ignored the pleas to arrange for services and otherwise failed to arrange for the services Plaintiffs' treating physicians ordered.

61.     For reasons Defendants never explained, on April 20, 2012, according to Defendants' own accounting, United Defendants arranged for and reinstated a few hours per week of Personal assistance services - Level I, and during the

subsequent nine (9) weeks, Defendants restored approximately 1/5 of the 13 hours of services, about 2 ½ hours weekly.

62.     Defendants have never explained to Plaintiff how they arrived at the decision to provide only an average of 2 ½ hours per week for nine weeks.

63.     During the period from April 20, 2012 and June 1, 2012, Defendants left Plaintiff no choice but to continue reallocating funds he needed to pay his basic living expenses and for his medication to pay caregivers, and to borrow from friends and family, to pay for the additional ten or eleven hours of Personal assistance services - Level I he needed each week.

64.     Plaintiff had to curtail his activities in the community, shopping for food and supplies, accessing the pharmacy for his medication, and appearing for appointments with his treating providers.

65.     Plaintiff became lost or disoriented, or both, from time to time in the community in attempting to carry on his activities.

66.     In June 2012, Plaintiff sought the assistance of an attorney with his claims for Personal assistance services - Level I because Defendants ignored his pleas, and those of his treating physicians, for coverage.

67.     Defendants commenced covering 5 hours per week of Personal assistance services - Level I again on July 11, 2012, provisionally while they supposedly "investigated" Plaintiff's claims.

18

68.     During the period from July 11, 2012, Defendants provided only 5 of the minimum 13 hours of services medically necessary for Plaintiff.

69.     Plaintiff had to curtail his activities in the community, shopping for food and supplies, accessing the pharmacy for his medication, and appearing for appointments with his treating providers.

70.     Plaintiff became lost or disoriented, or both, from time to time in the community in attempting to carry on his activities.

71.     On July 28, 2012, Plaintiff's attorney made a formal demand to Defendants for coverage of the 13 hours and for recovery of his out-of-pocket costs for the Personal assistance services - Level I.

72.     Defendants continued "investigating" Plaintiff's claims, maintaining coverage at 5 hours per week until the first week of October 2012, when they restored the services to 13 hours per week.

73.     During the period from July 11, 2012 through September 2012, Plaintiff still had no choice but to reallocate funds he needed to pay his basic living expenses and for his medication to pay caregivers, and to borrow from friends and family, for the absolute minimum of the services he could get by on.

74.     In October 2012, after Plaintiff's counsel instituted a demand for the restoration of his services, Defendants restored ten (10) of the minimum of 13 hours per week of services Plaintiff requires.

75.    Defendants have never arranged for the remaining three hours per week Plaintiff's physicians have ordered, causing him to incur costs out-of-pocket for the additional services he needs.

76.    Plaintiff has had to curtail his activities in the community, shopping for food and supplies, accessing the pharmacy for his medication, and appearing for appointments with his treating providers.

77.    Plaintiff has had to pay out-of-pocket for assistance to enable him to venture into the community for necessary activities.

78.    Defendants have never provided Plaintiff with an explanation for their failure to arrange the remaining three hours per week, for a total of thirteen hours, nor have they provided Plaintiff with grounds for limiting his services to ten (10) hours per week despite his physicians' orders for thirteen (13) hours per week.

79.    During the period from September 2011 through September 2012, Plaintiff reallocated or borrowed $8,943 to pay for the minimum amount of services which were medically necessary for him to perform the activities of daily living, travel to-and-from medical appointments, maintain his health status, and remain safe from injury.

80.    Plaintiff demanded reimbursement of the $8,943 he incurred for loans and out-of-pocket payments for replacement personal assistant services.

81.    United Defendants, through counsel, insisted that Plaintiff submit a

20

request for reimbursement.

82.     Plaintiff complied on or around January 10, 2013, submitting a demand through counsel on the form United Defendants required him to prepare and submit for reimbursement.

83.     United Defendants subsequently denied Plaintiff's demand for reimbursement.

84.     United Defendants thereafter arranged for approximately ten hours per week of personal assistant services for Plaintiff during 2013.

85.     In December 2013, Plaintiff learned that his regularly assigned personal assistant was moving to Maui, and United Defendants would have to ensure that new arrangements were in place to avoid interruptions.

86.     After Plaintiff's regularly assigned personal assistant left, Plaintiff did experience service interruptions because United Defendants failed to make proper and effective arrangements for a replacement personal assistant.

87.     On April 24, 2014, Plaintiff and his counsel met with the "service coordinator" United Defendants assigned to him, the service coordinator's supervisor, and counsel for United Defendants.

88.     Plaintiff explained that United Defendants' arrangements for personal services were frequently inadequate, leaving him with no personal assistance or minimal personal assistance coverage for the week.

21

89.   Plaintiff explained he had no medication management assistance and that he frequently did not know if he had taken the proper doses of his medication.

90.   United Defendants' representatives promised to arrange for 2 hours per week of skilled nursing services to follow Plaintiff and his medication management, with services to be increased if medically necessary according to the nursing provider.

91.   United Defendants' representatives promised to hire a new contractor to arrange for Plaintiff's personal assistance services of 13 hours per week by immediately changing the agency supposedly contracted to provide Plaintiff's personal assistance services.

92.   Subsequently, in fact, despite Plaintiff's numerous and repeated complaints, Defendants have failed since June 25, 2014, to arrange for

   a.   Medically necessary services such as eyeglasses;

   b.   weekly skilled nursing for Plaintiff's medication management; and

   c.   the 13 hours per seek of Personal Assistance – Level I services

93.   Plaintiff has again incurred debt and paid out-of-pocket to hire assistants because he cannot manage without the services.

94.   United Defendants have refused to reimburse Plaintiff for any of his out-of-pocket costs incurred for substitute services.

95.   Plaintiff has since had to curtail his activities in the community,

shopping for food and supplies, accessing the pharmacy for his medication, and appearing for appointments with his treating providers.

96. Plaintiff has become lost or disoriented, or both, from time to time in the community in attempting to carry on his activities since June 25, 2014.

97. Plaintiff has had to pay out-of-pocket and borrow to hire substitute personal assistants, on a hit-or-miss basis, since the Defendants' most recent reduction in his services on June 25, 2014.

## BASES IN COMMON LAW, STATUTE, AND REGULATIONS

98. On July 26, 1990, President George H.W. Bush signed the ADA, 42 U.S.C. §§ 12101-12181, establishing the most important civil rights laws for persons with disabilities in our nation's history.

99. In enacting the ADA, Congress was particularly concerned about the unnecessary segregation and institutionalization of people with disabilities and the resulting lack of full participation in and access to community services and activities, therefore expressly finding that, "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

100. Under the "integration mandates" of the Americans with Disabilities Act, 42 U.S.C. § 12132, its implementing regulations, 28 C.F.R. § 35.130(d), and

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and its implementing regulations, 28 C.F.R. § 41.5l(d), Defendants must administer arranging medical assistance for dual eligible disabled individuals in a manner that maintains access to the most integrated setting appropriate to a disabled individual's needs.

101.   Accordingly, Title III of the ADA prohibits Medicaid Managed Care Organizations, including Defendants, from discriminating against persons with disabilities whom they are paid to serve. 42 U.S.C. §§ 12131-32. Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified person with disabilities shall, solely by reason of his or her disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794(a).

102.   Section 504's regulations prohibit recipients of federal financial assistance from "utiliz[ing] criteria or methods of administration ... (i) [t]hat have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap [or] (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program with respect to handicapped persons." 45 C.F.R. § 84.4(b)(4); 28 C.F.R. § 41.51(b)(3)(I).

103.   Unnecessary and unwanted segregation and isolation of people with disabilities as a result of improper or inappropriate administration of benefits

constitutes discrimination on the basis of disability. *Olmstead v. L. C.*, 527 U.S. 581, 587 (1999).

104.   The Americans With Disabilities Act and section 504 of the Rehabilitation Act interpretations require public entities and private entities administering public benefits to annually self-evaluate their services, policies, customs, and practices to determine whether they are meeting the requirements of the statutes and regulations.

105.   The Americans With Disabilities Act and section 504 of the Rehabilitation Act have <u>both</u> been deemed to require public entities and private entities administering public benefits to provide opportunities for persons with disabilities and organizations representing them to participate in the self-evaluation.

106.   Defendants' conduct evidences a deliberate indifference to the express non-discrimination requirements of the United Defendants' contract with the State of Hawai`i to provide or arrange medical assistance for the aged, blind, and disabled enrolled with the United Defendants' plan.

107.   The Federal Medicaid statute, Title XIX of the Social Security Act, which is codified at 42 U.S.C. § 1396 et seq., authorizes the establishment by states of medical assistance programs for low income individuals who meet certain eligibility requirements. Medicaid is a joint federal and state program that provides

medical services to low-income persons pursuant to Title XIX of the Social

Security Act. 42 U.S.C. §§ 1396-1396v.

108.   Medicaid programs are jointly funded by the federal and state

governments, and are designed by the states within the framework of options and

requirements established under the Medicaid statute.

109.   One of the primary purposes of Medicaid is "to furnish ...

rehabilitation and other services to help families and individuals attain or retain

capability for independence and self care .... " 42 U.S.C. § 1396, and therefore

each participating state Medicaid plan must contain reasonable standards to

determine the extent of services needed to obtain these objectives. 42 U.S.C. §

1396a(a)(l 7).

110.   Individuals are eligible for Medicaid if they are either "categorically

needy" or "medically needy." Individuals such as Plaintiff, who receive

Supplemental Security Income ("SSI") benefits are deemed "categorically needy."

111.   Pursuant to the Federal statutory scheme, the single state agency

responsible for the State's Medicaid Program, in this case, the State of Hawai`i

Department of Human Services, is responsible for preventing discrimination in the

provision of Medicaid benefits and thus must ensure that disabled individuals

eligible for Medicare due to their disabilities and for Medicaid under the State Plan

receive all Medicaid benefits to the same extent any other individual covered by

the State Plan receives benefits. 42 U.S.C. §§ 1396a(a)(10)(E), 1396d(a) and (p).

112. In other words, the State of Hawai`i`s Department of Human Services is and was responsible for ensuring that Plaintiff, as a dual-eligible disabled individual, suffered no discriminatory treatment in the provision and coordination of his benefits at the hands of persons and entities contracted to provide or arrange medical assistance.

113. The State of Hawai`i has contracted with Medicaid Managed Care Organizations to arrange for medical assistance for all Medicaid-eligible individuals since February 2009, adding the aged, blind, and disabled Medicaid-eligible individuals to Medicaid managed care in February 2009.

114. The State of Hawai`i Department of Human Services contracted with the United Defendants to arrange for medical assistance for a population of eligible aged, blind, and disabled individuals, and Plaintiff was assigned to United Defendants.

115. The State of Hawai`i Department of Human Services allowed the United Defendants to market their SecureHorizons Medicare Advantage Plan to Plaintiff and other enrollees in Hawai`i's QUEST Expanded Access Program for aged, blind, and disabled persons who were enrolled with Medicare's fee-for-service program, with the proviso that United Defendants refrained from any communications suggesting that enrollment with United Defendants' Medicare

27

Advantage plan "SecureHorizons" was required.

116.   Title XIX of the Social Security Act requires that Medicaid services be furnished to eligible individuals, and without delay caused by the state agency's administrative procedures. 42 U.S.C. § 1396a(a)(8); 42 C.F.R. § 435.930(a). 142.

117.   Defendants' policies, practices, acts and omissions concerning administration of the State of Hawai`i's QUEST Expanded Access program have denied or extensively delayed provision of medically necessary services for Plaintiff and others similarly situated.

118.   Pursuant to Title III of the Americans with Disabilities Act and section 504 of the Rehabilitation Act, Plaintiff seeks a declaration by this Court that Defendants discriminated against him on the basis of his disabilities by denying him access to goods, services, facilities, privileges, advantages, and covered benefits to which he was entitled which resulted in a threatened and actual substantial loss of his liberty and ability to access the community to the same extent of other enabled Medicaid beneficiaries, and subjected him to unsafe and potentially injurious circumstances within his own apartment and when he ventured into the community.

119.   Pursuant to Title III of the Americans with Disabilities Act and section 504 of the Rehabilitation Act, Plaintiff seeks injunctive relief and compensatory damages on account of Defendants' deliberate acts and indifference

28

in denying coverage of skilled nursing services and personal assistant services

during several lengthy periods in a continuing course of conduct, which injunctive

remedies which Congress did not intend to be exclusive of other remedies.

120.   Pursuant to violations of Plaintiff's civil rights, his property interests

in the Medicare/Medicaid medically necessary nursing and personal assistant

services, and liberty interests, Plaintiff seeks an award of compensatory damages

under 42 U.S.C. § 1983 to redress the concrete loss Plaintiff suffered by reason of

the Defendants' wrongful conduct.

121.   Pursuant to violations of Plaintiff's civil rights under protection of 42

U.S.C. § 1983, Plaintiff seeks an award of punitive damages for the malicious,

intentional, reckless, or callous indifference to Plaintiff's protected rights by any

individual Doe Defendants Plaintiff identifies and names during the course of the

instant proceedings.

122.   Plaintiff seeks reimbursement of his out-of-pocket expenses, with

interest allowed by statute.

123.   Plaintiff furthermore seeks an award of attorneys' fees and all

allowable costs, including litigation costs, pursuant to 42 U.S.C. §12205, 29 U.S.

Code § 794a, and 42 U.S.C. § 1988.

124.   Pursuant to 42 U.S.C. § 1396a, Plaintiff seeks an order mandating that

United Defendants establish, implement, and maintain standards of practice

ensuring beneficiaries enrolled in the United Defendants' plan for the aged, blind, and disabled promptly receive the benefits medically necessary to maintain and improve, to the greatest possible extent given available services and technologies, their integration into the community, including, in particular, providing complete assurance that disabled enrollees in the State of Hawai`i's Medicaid Program/Medicaid Managed Care Program, who depend upon nursing and personal assistant services for their independence, mobility, and integration into the community are never under any circumstances denied those services.

125.   Pursuant to Haw. Rev. Stat. Chapter 489, Plaintiff seeks compensatory damages for the violation of his Hawai`i State civil rights.

126.   Pursuant to Haw. Rev. Stat. § 431:13-103(a), Plaintiff seeks a declaration that Defendants violated Hawai`i's unfair competition insurance statute to wit:

a.  Misrepresented the benefits and advantages, and terms of consolidating enrollment in dual coverage benefits with the United Defendants;

b.  Misrepresented pertinent facts or policy provisions relating to coverage of PMDs;

c.  Failed to respond with reasonable promptness to communications of Plaintiff and his health care providers;

d.  Failed to adopt and implement reasonable standards for the prompt investigation of claims for wheelchairs and PMDs;

e.  Refused to pay for services and refused to reimburse Plaintiff the out-of-

pocket costs he incurred for replacement services without conducting a reasonable investigation;

f.  Failing to provide Plaintiff with a reasonable written explanation for delays, in multiple instances, in requests for coverage allowed to remain unresolved for over thirty days;

g.  Failing to attempt, in good faith, to effectuate prompt, fair, and equitable settlements of Plaintiff's requests for reimbursement of the out-of-pocket costs he incurred for replacement services where liability for coverage was reasonably clear based upon the strong recommendations of Plaintiff's treating providers and the long-established fact under the Department's fee-for-service program that Plaintiff required such services;

h.  Compelled Plaintiff to engage counsel and institute litigation to secure coverage for personal services;

i.  Attempted to negotiate for fewer and lesser services than those Plaintiff's treating physicians determined were medically necessary for him without conducting or providing a proper and lawful medical necessity determination and informing Plaintiff of the results of the medical necessity determination required by Hawaii statute, H.R.S. § 432E-1.4; and

j.  Failed to promptly provide a reasonable written explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of coverage diminished and denied coverage of the services which had previously been determined medically necessary for Plaintiff..

127.  Pursuant to Hawai`i's common law tort of bad faith in the insurance context, Plaintiff seeks compensatory damages against Defendants for failing to

properly investigate his requests for coverage and for mishandling his claims resulting in excessive, unnecessary, and injurious and continuing delay in providing coverage of nursing and personal assistant benefits which have been clearly covered and medically necessary since Defendants first interrupted those services in October 2012.

128.   Pursuant to Hawai`i law, Plaintiff seeks compensatory damages against Defendants for negligent infliction of emotional distress.

129.   Pursuant to Hawai`i law, Plaintiff seeks compensatory damages against Defendants for intentional infliction of emotional distress.

130.   Pursuant to 42 U.S.C. § 1983 and Hawai`i law, Plaintiff seeks punitive damages to punish Defendants and to serve as an example/warning to Defendants and others to avoid acts of gross negligence, retaliation, and oppressive conduct, and to conduct their activities arranging medical assistance in complete good faith and any such affairs involving disabled persons free of any semblance of discriminatory conduct.

131.   An agent soliciting dual eligible beneficiaries to enroll with the United Defendants' SecureHorizons Medicare Advantage Plan called on Plaintiff at his apartment after his enrollment with the United Defendants' Evercare under the State of Hawai`i QUEST Expanded Access Program for the aged, blind, and disabled.

132. The agent falsely promised Plaintiff that having all of his coverage managed by United Defendants would simplify the coordination of his benefits and care, and that Plaintiff would have the broadest possible access to providers because UHG was the largest health insurance company in the U.S.

## DEFENDANTS' BAD FAITH RESPONSES TO PLAINTIFF'S REQUESTS

133. In their over two years of prior experience with Plaintiff, United Defendants were charged with knowing Plaintiff, his condition, and his needs for medical assistance according to their responsibility for arranging medical assistance.

134. United Defendants had actual knowledge that Plaintiff suffered additional injuries on June 7, 2010, worsening his traumatic brain injury and leaving him further disabled, and in greater need of personal assistance.

135. Pursuant to their contract with the State of Hawai`i, United Defendants were required to assess Plaintiff face-to-face initially, and then up to four or more times per year, and to otherwise maintain current knowledge of him, his conditions, and his disabilities, through his medical providers to ensure that his needs for medical assistance were met.

136. Defendants were required to arrange for care that was medically necessary under the meaning of Haw. Rev. Stat. § 432E-1.4:

a. Recommended by Plaintiff's treating providers;

33

b. To treat a medical condition, in this case, Plaintiff's disabilities from his traumatic brain and other injuries;

c. The most appropriate service considering the potential benefits and harms to Plaintiff;

d. Known to be effective in improving health outcomes;

e. The most cost effective alternative, where "cost effective" means the benefits and harms relative to the costs represent an economically efficient use of resources in Plaintiff's case.

137. Defendants' application of Haw. Rev. Stat. § 432E-1.4 was furthermore governed by their obligation and duty to arrange for services reasonably necessary to remove potential threats of institutionalization or reduction in Plaintiff's integration into the community.

138. Defendants were, in fact, required to take any necessary steps or implement any necessary measures to ensure that Plaintiff would not, by reason of his disabilities, be excluded from participation in or denied access to the benefits of services United Defendants' contract with the State of Hawai`i required them to arrange.

139. Defendants had a duty and obligation to arrange for uninterrupted services to ensure Plaintiff was not forced to choose between having sufficient personal assistance and keeping sufficient food and staples on hand or paying his

rent and utilities, and was not put at risk of mistakes in his medication management.

140.   Defendants had a duty to act in good faith in arranging for medical assistance for Plaintiff.

141.   Despite their full and actual knowledge of Plaintiff's disabilities and the fact that they had not arranged for the level and amount of personal assistance Plaintiff's treating providers had ordered, Defendants withheld, neglected, and refused to arrange for personal assistance and nursing services for Plaintiff.

142.   Defendants have never had any reasonable grounds for withholding, terminating, suspending, or reducing Plaintiff's personal assistance services or nursing services on medical necessity grounds.

143.   Defendants have never had any reasonable grounds for making a determination that withholding, suspending, or reducing Plaintiff's personal assistance services or nursing services would not subject him to the threat of institutionalization or reduction of his integration into the community.

144.   Defendants' reduction in Plaintiff's personal assistance services to five or fewer hours was without reasonable grounds, and thus it must be concluded that the purpose of the reduction was to coerce an agreement from Plaintiff to receive fewer hours of personal assistance.

145.   Defendants' reduction in Plaintiff's personal assistance services from

thirteen to ten hours per week was without reasonable grounds, and thus it must be concluded that Defendants' goal in withholding personal assistance services and reduction of personal assistance services to five or fewer hours per week was purposed with coercing Plaintiff's agreement to accept a reduction to ten hours of personal services per week.

146.   It must be concluded that Defendants' sole bases for withholding, terminating, suspending, or reducing Plaintiff's personal assistance services and nursing services were unlawfully discriminatory and profit-seeking, and to negotiate a lesser benefit than that to which Plaintiff was entitled, in violation of Haw. Rev. Stat. § 431:13-103(a) and in breach of United Defendants' contract with the State of Hawaii and Plaintiff, as an intended beneficiary of that contract.

147.   Defendants thus wrongfully, unlawfully, and in bad faith deprived Plaintiff of the security and protection he sought and the State of Hawaii sought in contracting with Defendants to arrange for medical assistance, without regard to the consequences.

148.   Defendants' discrimination against Plaintiff, and particularly in increasing the threat of potential harm or institutionalization, is further evidenced in their delay and withholding of other covered medically necessary services, including failing or refusing to arrange for eyeglasses to be promptly dispensed to Plaintiff despite receiving a valid order from Plaintiff's ophthalmologist dated

36

September 16, 2014, which they have yet failed to authorize.

149.   Defendants' conduct evidences clearly that they failed to

a.  Establish adequate case management systems to identify the service needs of enrollees with disabilities, and ensure that medically necessary covered benefits are delivered on a timely basis, and

b.  implement plans, measures, and non-discrimination policies, in particular with respect to attitudinal barriers,

reasonable and necessary to ensure compliance with the requirements of Title III of the Americans With Disabilities Act.

## PLAINTIFF FORCED TO ENGAGE COUNSEL AND INITIATE LITIGATION TO SECURE COVERAGE OF MEDICALLY NECESSARY SERVICES

150.   In June 2012, Plaintiff sought the assistance of an attorney with his claims for Personal assistance services - Level I because Defendants ignored his pleas, and those of his treating physicians, for coverage.

151.   Defendants commenced covering 5 hours per week of Personal assistance services - Level I again on July 11, 2012, provisionally while they supposedly "investigated" Plaintiff's claims.

152.   Defendants never provided Plaintiff with any justification whatsoever for delaying reinstatement of his personal assistance services, and coverage thereof, to "investigate" services the need for which had been previously established for many years and which Defendants had previously arranged and

covered.

153.   On July 28, 2012, Plaintiff's attorney made a formal demand to Defendants for coverage of the 13 hours and for recovery of his out-of-pocket costs for the Personal assistance services - Level I.

154.   Defendants nonetheless continued "investigating" Plaintiff's claims, maintaining coverage at 5 hours per week until the first week of October 2012, when they restored the services to 13 hours per week.

155.   During the period from July 11, 2012 through September 2012, Plaintiff still had no choice but to reallocate funds he needed to pay his basic living expenses and for his medication to pay caregivers, and to borrow from friends and family, for the absolute minimum of the services he could get by on.

156.   Despite having restored Plaintiff's personal assistance services to 13 hours per week, Defendants subsequently failed to arrange for or reduced the number of hours of Personal Assistance – Level I services insufficient to meet Plaintiff's need for 13 hours per week, on and off during the succeeding months until April 2014 when counsel requested a meeting of the parties with their respective counsel during the quarterly "assessment" the service coordinator assigned to Plaintiff was supposed to carry out, to discuss and resolve any barriers to Defendants arranging for medically necessary services.

157.   Despite the understandings reached at the April 24, 2014 meeting,

Defendants failed to adequately arrange for thirteen hours of personal assistance services for Plaintiff and beginning in late June 2014, Defendants withheld, terminated, or suspended the personal assistance services for Plaintiff and thereafter, despite Plaintiff's repeated objections, provided only occasional personal assistance services.

158.   Plaintiff thus concluded that he must engage counsel to litigate his claims against Defendants because neither they nor the State of Hawaii's supposed oversight of their compliance with United Defendants' contract and Federal and State law would afford him the relief to which he is entitled.

## COUNT I
## VIOLATION OF CIVIL RIGHTS, MEDICAID ACT
## 42 U.S.C. §1983

159.   Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 158 above as though fully set forth herein.

160.   Defendants were deliberately indifferent to the fact that Plaintiff's mobility was restrained to the confines of his apartment except when he went to outside appointments with the assistance of a personal assistant, and Plaintiff frequently had to hire and pay a personal assistant himself because Defendants, in their deliberate indifference, failed or refused to arrange for a personal assistant.

161.   Defendants were the representatives or agents of the United

Defendants acting unlawfully under the United Defendants' contract with the State

of Hawai`i to provide or arrange medical assistance for Plaintiff and the aged,

blind, and disabled Medicaid beneficiaries and dual eligible enrolled with United

Defendants, and therefore acted wrongfully and unlawfully under color of law.

162.   Defendants used and abused their assignments and authority, acting

under color of law, to deprive Plaintiff of his Federal Constitutional and statutory

rights and privileges.

163.   Plaintiff suffered damages in amounts to be proven at trial on account

of Defendants' unlawful acts under color of law depriving Plaintiff of his

Constitutional and statutory rights with deliberate and evident indifference to

Plaintiff's rights and the consequences or potential consequences.

## COUNT II
## (Violation of the Americans With Disabilities Act against all Defendants)

164.   Plaintiff repeats, realleges and incorporates by reference the

allegations contained in paragraphs 1 through 163 above as though fully set forth

herein.

165.   At all relevant times herein, Plaintiff was and is a qualified individual

with a disability under the Americans With Disabilities Act, due to his physical

impairments which substantially limit more than one major life function.

166.   At all relevant times herein, Defendants were contracted to carry out

the State of Hawai`i's obligations to provide or arrange for medical assistance to

40

the aged, blind, and disabled Medicaid beneficiaries and dual eligible aged, blind, and disabled Medicaid-Medicare beneficiaries as a Medicaid Managed Care Organization administering benefits to which Plaintiff was entitled by law.

167.   Title III of the Americans with Disabilities Act prohibits administrative acts which "have the effect of discriminating on the basis of disability" or that perpetuate discrimination.  42 U.S.C. § 12182.

168.   At all relevant times herein, United Defendants were subject to Title III in contracting with the State of Hawai`i to administer benefits and arrange access to the goods, services, facilities, privileges, advantages, and covered benefits required by Federal law, and in accordance with Hawai`i's statutory medical necessity requirements, Haw. Rev. Stat. § 432E-1.4.

169.   At all relevant times herein, on information and belief, United Defendants received compensation and premiums from the State of Hawai`i to administer and arrange for medical assistance

170.   At least 50% of the funds with which the State of Hawai`i paid United Defendants the State of Hawai`i received from the Federal government pursuant to the federal share statute and regulations establishing and pertaining to Medicaid.

171.   Defendants withheld from, or reduced, or refused, or failed to arrange Personal Assistance – Level I and skilled nursing services for Plaintiff at various times since September 2011, denying him a benefits to which he was entitled, and

interfering with and preventing him from participating in the programs or to

benefits from the goods, services, and activities United Defendants contracted to

provide in violation of 42 U.S.C. 12182 and its implementing regulations.

172.   Defendants' administration of benefits violated Medicaid law,

Defendants' contract with the State of Hawai`i, Hawai`i's statutory medical

necessity requirements, Haw. Rev. Stat. § 432E-1.4, and Plaintiff's rights under

Title III.

173.   To prevent Defendants from continuing to violate Title III in

administering benefits and arranging medical assistance for Plaintiff and other

aged, blind, and disabled beneficiaries dependent upon skilled nursing services for

medication management and Personal Assistance – Level I services of 13 hours per

week presenting the threat and potential of institutionalization or reduction in their

integration into the community, Defendants should be

a.  enjoined and prohibited from their unlawful and invidiously

discriminatory practice of withholding coverage of medically necessary

benefits or delaying access to benefits to such an extent that aged, blind,

and disabled beneficiaries are deprived of mobility, or other goods,

services, facilities, privileges, advantages, and covered benefits required

by Federal law and medical necessity, and

b.  ordered to take all steps necessary to ensure the full enjoyment of rights

guaranteed by Title III.

174.   As a result of Defendants' discriminatory acts and indifference to the consequences, Plaintiff suffered personal injury, pain and suffering, and emotional harm and distress, loss of liberty, and denial of full integration into and enjoyment of society and Plaintiff's surrounding community, resulting in general and consequential damages in amounts to be proven at trial.

175.   As a result of Defendants' continuing pattern of discrimination, Plaintiff is presently suffering the denial of Personal Assistance – Level I and skilled nursing services, as a result of which Plaintiff has suffered and continues to suffer general and consequential damages in amounts to be proven at trial.

176.   Plaintiff is furthermore entitled to an award of attorneys' fees and all allowable costs pursuant to 42 U.S.C. §12205

## COUNT III
### (Violation of the Rehabilitation Act against all Defendants)

177.   Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 176 above as though fully set forth herein.

178.   At all relevant times herein, Plaintiff was and is a qualified individual with a disability due to his physical impairments which substantially limit more than one major life function.

179.   Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794,

provides in part that no otherwise qualified individual with a disability "shall solely by reason of his or her handicap, be excluded from the participation under any program or activity receiving Federal financial assistance…"

180. Regulations implementing Section 504 require that the administration of services, programs and activities in "the most integrated setting appropriate" to the needs of qualified individuals with disabilities. 28 C.F.R. § 41.51( d).

181. At all relevant times herein, the State of Hawai`i paid the United Defendants to administer and arrange for medical assistance with funds received from the Federal government.

182. United Defendants thus received and continue to receive federal financial assistance within the meaning of section 504 and were and are prohibited from excluding, denying benefits to, or discriminating against Plaintiff.

183. Defendants violated Plaintiff's section 504 rights by failing to arrange or withholding Personal Assistance – Level I and skilled nursing services repeatedly for lengthy periods of time, knowingly leaving Plaintiff with no safe means of independently navigating his apartment or venturing into the surrounding community during that lengthy period.

184. As a result of Defendants' acts and refusals to act promptly and in compliance with Federal Medicaid and Hawai`i State law, Plaintiff was essentially confined to his apartment on occasions when he needed to venture into the

community for essential activities and was incapable of meeting his needs unless and until he hired and paid a substitute personal assistant out of his own disability payments or borrowed money from friends, to carry on the activities of daily living for months at a time from September 2011 to the present, most of that time period with no hope of an end to his suffering.

185. To prevent Defendants from continuing to violate section 504, Defendants should be enjoined and prohibited from their unlawful and invidiously discriminatory practice of withholding coverage of medically necessary benefits or delaying access to benefits to such an extent that aged, blind, and disabled beneficiaries are deprived of integration into the community and participation in the activities available to non-disabled Medicaid beneficiaries and in which they are able to participate, or other goods, services, facilities, privileges, advantages, and covered benefits required by Federal law and medical necessity, and Defendants should be ordered to take all steps necessary to ensure the full enjoyment of rights guaranteed by section 504.

186. As a result of the conduct described above, Plaintiff was denied participation in and the benefits of the Medicaid and Medicare benefits United Defendants administer and arrange, constituting discrimination against Plaintiff solely on the basis of his disabilities, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. Sec. 794, and its implementing regulations.

187.   As a result of Defendants' discriminatory acts and indifference to the consequences, Plaintiff suffered personal injury, pain and suffering, and emotional harm and distress, loss of liberty, and denial of full integration into and enjoyment of society and Plaintiff's surrounding community, resulting in general and consequential damages in amounts to be proven at trial.

188.   As a result of Defendants' continuing pattern of discrimination, Plaintiff is presently suffering the denial of skilled nursing services and Personal Assistance – Level I services of 13 hours per week which Defendants have unlawfully and wrongfully, with indifference consistent with their prior conduct, withheld, or reduced, or terminated unlawfully, as a result of which Plaintiff has suffered and continues to suffer general and consequential damages in amounts to be proven at trial.

189.   Plaintiff is furthermore entitled to an award of attorneys' fees and all allowable costs pursuant to 29 U.S.C. § 794a.

## COUNT IV
## VIOLATION OF THE MEDICAID STATUTE AND REGULATIONS

190.   Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 189 above as though fully set forth herein.

191.   United Defendants, and other as yet unidentified Doe Defendants, must comply with all applicable provisions of Title XIX of the Social Security Act,

42 U.S.C. §§ 1396-1396v in their administration of benefits of the State of Hawai`i's Medicaid program for the aged, blind, and disabled, as a Medicaid Managed Care Organization.

192. Title XIX of the Social Security Act requires that Medicaid services be furnished to eligible individuals without delay attributable to administrative procedures. 42 U.S.C. § 1396a(a)(8); 42 C.F.R. § 435.930(a).

193. Defendants' policies, practices, acts and omissions concerning administration of benefits for the aged, blind, and disabled enrolled with United Defendants, and, in particular, benefits for Plaintiff, denied and unreasonably delayed provision of medically necessary benefits to which Plaintiff was entitled under his Medicaid-Medicare dual eligible enrollment.

194. Defendants thereby denied Plaintiff reasonably prompt provision of key benefits, and continue to deny the full medically necessary benefits in connection with Plaintiff's Personal Assistance – Level I and skilled nursing and other medically necessary covered benefits, in violation of the Social Security Act.

195. Defendants' unlawful administration of Medicaid and Medicare benefits is actionable by Plaintiff pursuant to 42 U.S.C. §§ 1983 and 1988, entitling Plaintiff to compensatory damages.

196. As a result of Defendants' willful failure to comply with the Medicaid statute's requirements, Plaintiff suffered personal injury, pain and suffering, and

emotional harm and distress, loss of liberty, and denial of full integration into and enjoyment of society and Plaintiff's surrounding community, resulting in general and consequential damages in amounts to be proven at trial.

197.   As a result of Defendants' continuing violations of the Medicaid statute, Plaintiff is presently suffering the denial of Personal Assistance – Level I services of 13 hours per week, and skilled nursing services for medication management, and other covered benefits which Defendants have unlawfully and wrongfully, with indifference consistent with their prior conduct, failed to arrange or withheld or denied, as a result of which Plaintiff has suffered and continues to suffer general and consequential damages in amounts to be proven at trial.

198.   Plaintiff is furthermore entitled to an award of attorneys' fees and all allowable costs pursuant to 42 U.S.C. § 1988.

## COUNT V
## VIOLATION OF CHAPTER 489, HAW. REV. STAT.

199.   Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 197 above as though fully set forth herein.

200.   Plaintiff is a qualified disabled individual under the meaning of Hawai`i's non-discrimination statute, Chapter 489, Haw. Rev. Stat.

201.   Chapter 489 prohibits discrimination in all respects equivalent to Title III of the ADA.

48

202.    This Court has supplemental jurisdiction over Plaintiff's Chapter 489 claims.

203.    As a result of Defendants' discriminatory acts and indifference to the consequences in violation of Chapter 489, Haw. Rev. Stat., Plaintiff suffered personal injury, pain and suffering, and emotional harm and distress, loss of liberty, and denial of full integration into and enjoyment of society and Plaintiff's surrounding community and the benefits therein, resulting in general and consequential damages in amounts to be proven at trial.

204.    As a result of Defendants' continuing pattern of discrimination, Plaintiff is presently suffering the denial of Personal Assistance – Level I services of 13 hours per week, with indifference consistent with their prior conduct, and the loss of other benefits accessible to Medicaid beneficiaries, as a result of which Plaintiff has suffered and continues to suffer general and consequential damages in amounts to be proven at trial.

205.    Plaintiff is furthermore entitled to an award of attorneys' fees and all allowable costs pursuant to Haw. Rev. Stat. § 489-7.5.

## COUNT VI
## <u>TORT OF BAD FAITH</u>

206.    Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 205 above as though fully set forth herein.

49

207.   United Defendants are liable for claims arising Hawai`i's tort of bad faith.

208.   Pursuant to Hawai`i law, United Defendants had a duty to act in good faith and deal fairly with Plaintiff in investigating and handling his requests to arrange for 13 hours per week of Personal Assistance – Level I services and for skilled nursing to assist him in managing his medications, and, most recently, also for eyeglasses, all of which his treating providers determined were medically necessary.

209.   United Defendants failed to act in good faith by failing to arrange for, withholding, reducing, or terminating Personal Assistance – Level I services for Plaintiff to secure his agreement to a lesser benefit than the benefit to which he was entitled.

210.   United Defendants' use of the leverage secured by wrongfully reducing or withholding proper arrangements for Personal Assistance – Level I services and skilled nursing services to further their unlawful negotiation for lesser benefits  constituted *per se* bad faith because United Defendants violated Hawai`i's insurance law, and Haw. Rev. Stat. § 431:13-103(a).

211.   United Defendants withholding of medically necessary benefits to which Plaintiff was entitled furthermore violated Hawai`i's medical necessity statute, Haw. Rev. Stat. § 432E-1.4, constituted unlawful bad faith claims

handling.

212.   Defendants failed to duly investigate and handle Plaintiff's coverage claims.

213.   Defendants have continued their bad faith conduct towards Plaintiff, denying coverage of, or authorization for dispensing of, eyeglasses his treating ophthalmologist ordered on September 16, 2014.

214.   Pursuant to Hawai`i law, the United Defendants breached the implied covenant of good faith and fair dealing because their conduct damaged the very protection or security which Plaintiff was entitled to expect from a health insurer in Hawai`i.

215.   Plaintiff suffered foreseeable mental anguish, despair, extreme emotional distress, and pain and suffering as a direct and natural foreseeable consequence of the United Defendants' violation of the implied covenant of good faith and fair dealing, and violations of Hawai`i's insurance law.

216.   As a direct and proximate result of United Defendants' bad faith and tortious breach of the implied covenant of good faith and fair dealing, Plaintiff suffered foreseeable general and special damages, and foreseeable emotional distress, mental anguish and pain and suffering in amounts to be proven at trial.

## COUNT VII
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

217.   Plaintiff repeats, realleges and incorporates by reference the

allegations contained in paragraphs 1 through 216 above as though fully set forth herein.

218.   Defendants knew or should have known, and it was reasonably foreseeable that failing to arrange for 13 hours per week of Personal Assistance - Level I services for Plaintiff would condemn him to adverse living conditions due to his inability to perform some of the activities necessary for maintaining a hygienic and safe apartment, and would be confined to his apartment, interfering with his independence in carrying out the activities of daily living.

219.   Defendants knew or should have known, and it was reasonably foreseeable that failing to arrange for consistent coverage of skilled nursing services for assisting Plaintiff in managing his medications and monitoring his status and medication intake would subject him to unjustifiable danger which could be controlled or eliminated by providing adequate skilled nursing services.

220.   Defendants knew or should have known, and it was reasonably foreseeable that denying Plaintiff access to the benefits and goods and services in the community by failing or refusing to arrange 13 hours per week of Personal Assistance – Level I services, and imposing on him the cost and burden of hiring and arranging for and paying substitute personal assistants when he was able to do so, would cause Plaintiff increasingly severe and unabated extreme emotional distress, with periods of despair and hopelessness, feelings of powerlessness and

being oppressed, despondence, and depression.

221.   Defendants knew or should have known, and it was reasonably foreseeable that Plaintiff's anguish would be heightened even more by the fact that their refusal to arrange for the services due to his disability and need for assistance to advocate on his behalf, which rendered him less able and less likely to overcome their insistence on arranging fewer Personal Assistance – Level I benefits to his ultimate detriment.

222.   Defendants knew or should have known, and it was reasonably foreseeable that Plaintiff's traumatic brain injuries rendered him particularly vulnerable to extreme emotional distress, anxiety, depression, and feelings of hopelessness.

223.   Despite their knowledge of Plaintiff's circumstances and vulnerability, Defendants unjustifiably and unlawfully delayed, withheld, and then denied coverage of the benefits to which Plaintiff was entitled, causing Plaintiff to suffer extreme emotional distress month after month.

224.   The pain and suffering, and extreme emotional distress Plaintiff suffered could have been avoided had Defendants complied with the law and been non-negligent with respect to the consequences of their unlawful conduct.

225.   As a direct and proximate result of Defendants' negligent conduct described herein, Plaintiff's extreme pain and suffering was unnecessarily

prolonged, and Plaintiff suffered pain, depression, mental worry, anxiety, anguish, hopelessness, loss of sleep, indignity, and other symptoms of severe emotional distress in amounts to be proven at trial.

## COUNT VIII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

226.   Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 225 above as though fully set forth herein.

227.   Defendants knew that failing to arrange for or withholding arrangements for 13 hours per week of Personal Assistance – Level I services, or reducing the number of hours of personal assistance would condemn Plaintiff to be confined to his apartment and interfere with his independence in carrying out the activities of daily living, and with such knowledge Defendants nonetheless unlawfully failed to arrange for or withheld or reduced from 13 hours of Personal Assistance – Level I services for Plaintiff.

228.   Defendants knew that denying Plaintiff the mobility to carry out the activities of daily living independently, and denying him his independence and mobility, for weeks, months, and eventually years, off and on, would cause Plaintiff increasingly severe and unabated extreme emotional distress, with periods of despair and hopelessness, feelings of powerlessness and being oppressed, despondence, and depression, and with such knowledge Defendants nonetheless

unlawfully failed to arrange for or withheld or reduced from 13 hours of Personal

Assistance – Level I services for Plaintiff.

229.   Defendants knew that Plaintiff would potentially associate their

unlawful failure to arrange for or withholding or reduction of 13 hours per week of

Personal Assistance – Level I services with his disability because he would feel

less able and less likely to overcome their insistence on lesser benefits to his

ultimate detriment.

230.   Defendants knew that Plaintiff's traumatic brain injuries rendered him

particularly vulnerable to extreme emotional distress, anxiety, depression, and

feelings of hopelessness.

231.   Despite their knowledge of Plaintiff's circumstances and

vulnerability, Defendants unjustifiably and unlawfully failed to arrange or

withheld, or refused to provide and reduced from 13 hours of Personal Assistance

– Level I services for Plaintiff, causing Plaintiff to suffer extreme emotional

distress month after month.

232.   Defendants' acts were knowing and intentional or indifferent to the

consequences, Plaintiff's extreme emotional distress, and indeed it may be

reasonably inferred from Defendants' actions despite knowing Plaintiff would

suffer extreme emotional distress that Defendants intended for his suffering

emotional distress to aid them in their negotiations for lesser benefits.

55

233.   The pain and suffering, and extreme emotional distress Plaintiff

suffered could have been avoided had Defendants complied with the law and been

non-negligent with respect to the consequences of their unlawful conduct.

234.   Defendants' acts attempting to take advantage of Plaintiff's extreme

emotional distress to coerce him to accept fewer hours of Personal Assistance –

Level I services and forego skilled nursing services evidenced intent and was

unlawful and outrageous.

235.   As a direct and proximate result of Defendants' intentional infliction

of emotional distress described herein, Plaintiff's extreme pain and suffering was

unnecessarily prolonged, and Plaintiff suffered pain, depression, mental worry,

anxiety, anguish, hopelessness, loss of sleep, indignity, and other symptoms of

severe emotional distress in amounts to be proven at trial.

## COUNT IX
## PUNITIVE DAMAGES

236.   Plaintiff repeats, realleges and incorporates by reference the

allegations contained in paragraphs 1 through 235 above as though fully set forth

herein.

237.   Defendants knowingly and willfully violated Hawai`i insurance laws,

Haw. Rev. Stat. §§ 431:13-103(a) and 432E-1.4 with indifference to the

consequences to Plaintiff.

238.   Defendants' denial of similar benefits, and excessive delays and

withholding of coverage for such benefits, in knowing violation of Hawai`i insurance laws, constitutes a pattern of conduct unlawful for the reasons set forth above.

239.   Defendants' acts taking advantage of Plaintiff's extreme emotional distress and disabilities in attempts to secure his agreement to lesser benefits than the benefits to which he was and is entitled evidenced intent and was outrageous.

240.   Defendants' acts and withholding of Plaintiff's entitlements despite the extreme distress and danger to which he was thus subjected, were committed without just cause and beyond all bounds of decency, and were therefore extreme and outrageous.

241.   Defendants' indifference to the consequences of their acts and violations of the law entitle Plaintiff to an award of punitive damages pursuant to 42 U.S.C. § 1983.

242.   Defendants' want of care and indifference to the pain and suffering and daily danger which Plaintiff endured solely due to their determination to withhold benefits and fail to arrange or terminate medically necessary care which he required and to which he was entitled raises the presumption of conscious indifference to the consequences to Plaintiff, and to his suffering the loss of liberty and enjoyment of life, pain and suffering and loss of independence in carrying out the activities of daily living, were willful, wanton, and committed without regard to

the consequences to Plaintiff thereof, evoking outrage and entitling Plaintiff to an award of punitive damages under Hawai`i law.

243.   For all of the foregoing reasons, and more to be proved at trial, Plaintiff is entitled to and should be awarded punitive damages in amounts to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants and in favor of Plaintiff as follows:

A.   For injunctive relief mandating that United Defendants institute and comply with specific policies, procedures, customs, and practices in arranging medical assistance ensuring that the aged, blind, and disabled enrollees of United Defendants State of Hawai`i Medicaid Plan(s) have the number of hours of Personal Assistance services and the skilled nursing for medication management which their treating providers deem to be medically necessary, under their Medicaid or Medicare coverage;

B.   For injunctive relief appointing a special master to review United Defendants' denials of coverage for Personal Assistance services and skilled nursing services for medication management, to determine whether United Defendants' failures to arrange for the services the beneficiaries' treating providers have ordered, are lawful under Hawai`i's statutory medical

necessity requirements at Haw. Rev. Stat. § 432E-1.4, subject only to the

Court's further review on motion clearly demonstrating consistent compliance

with Haw. Rev. Stat. § 432E-1.4 for a period of time the Court deems sufficient

to demonstrate United Defendants' policies, procedures, customs, and practices

governing coverage of Personal Assistance and skilled nursing services

therefore meet the medical necessity requirements and are being met;

      C.     A Declaration that Defendants discriminated against Plaintiff

on the basis of his disabilities by denying him access to goods, services,

facilities, privileges, advantages, and covered benefits to which he was entitled

which resulted in a substantial loss of his liberty and ability to access the

community to the same extent of other enabled Medicaid beneficiaries;

      D.     A Declaration that Defendants violated Hawai`i's unfair

competition insurance statute in Plaintiff's case by

i) Misrepresenting the benefits and advantages of enrolling with
SecureHorizons;

ii) Misrepresenting United Defendants' performance and policies relating to
coverage of Personal Assistance – Level I services;

iii) Failing to respond promptly to communications and inquiries concerning
Plaintiff's 13 hours per week of Personal Assistance – Level I services;

iv) Failing to adopt/implement reasonable standards for investigating

requests to arrange for Plaintiff's 13 hours per week of Personal

Assistance – Level I services;

v) Refusing to cover Plaintiff's 13 hours per week of Personal Assistance –
Level I services without conducting a reasonable investigation of the
request for coverage;

vi) Failing to affirm or deny coverage of Plaintiff's 13 hours per week of
Personal Assistance – Level I services within a reasonable time of the
request to arrange services;

vii) Failing to provide Plaintiff with a reasonable written explanation of
the reasons for delays in arranging, and for terminating or reducing,
Plaintiff's 13 hours per week of Personal Assistance – Level I services;

viii) Failing to attempt in good faith to effectuate a prompt, fair, and
equitable settlement of Plaintiff's repeated and numerous requests for
reinstatement of his 13 hours per week of Personal Assistance – Level I
services;

ix) Compelling Plaintiff to resort to engaging counsel to assist him in
compelling United Defendants to arrange for 13 hours per week of
Personal Assistance – Level I services to be consistently and fully
provided;

x) Negotiating for lesser benefits than Plaintiff's treating providers

determined were medically necessary without conducting or providing a medical necessity analysis of the medical necessity of Plaintiff's 13 hours per week of Personal Assistance – Level I services so that he could pursue internal appeals for reinstatement;

xi)   Withholding/delaying arrangements to provide Plaintiff's 13 hours per week of Personal Assistance – Level I services to coerce his agreement to fewer hours per week of services;

xii)   Failing to promptly provide a reasonable written explanation for denial of coverage or failures to arrange 13 hours per week of Personal Assistance – Level I services;

E.   For general and special damages Plaintiff incurred on account of Defendants' violations of 42 U.S.C. § 1983, including Plaintiff's out-of-pocket expenses and loans he secured to hire and pay substitute personal assistants, in the amounts proved at trial;

F.   For general and special damages Plaintiff incurred on account of Defendants' violation of Title III of the Americans With Disabilities Act in the amounts proved at trial;

G.   For general and special damages Plaintiff incurred on account of Defendants' violation of section 504 of the Rehabilitation Act of 1973 in the amounts proved at trial;

H.     For general and special damages Plaintiff incurred on account of Defendants' violation of Chapter 489, Haw. Rev. Stat., in the amounts proved at trial;

I.     For general and special damages Plaintiff incurred on account of Defendants' violation of Title XIX, the Federal Medicaid statute, and Federal Medicaid regulations in the amounts proved at trial;

J.     For general and special damages Plaintiff incurred on account of Defendants' bad faith failure to investigate the medical necessity of 13 hours per week of Personal Assistance – Level I services and skilled nursing services in the amounts proved at trial;

K.     For damages Plaintiff incurred on account of Defendants' negligent infliction of emotional distress in the amounts proved at trial;

L.     For damages Plaintiff incurred on account of Defendants' intentional infliction of emotional distress in the amounts proved at trial;

M.     For punitive damages pursuant to Plaintiff may be awarded pursuant to 42 U.S.C. § 1983;

N.     For punitive damages pursuant to Plaintiff may be awarded pursuant to Hawai`i law;

O.     For any and all other remedies provided pursuant to 42 U.S.C. § 1983, the Federal Medicaid statute and regulations, the Americans With

Disabilities Act, the Rehabilitation Act, and Chapter 489, Haw. Rev. Stat.;

       P.     For all costs incurred, including litigation costs, and for an amount for reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, or § 12105, or 29 U.S.C. § 794a, or Haw. Rev. Stat. § 489-7.5; and

       Q.     For any and all other relief that this Court may deem just and proper.


Dated:  Honolulu, Hawai`i, January 15, 2015


_____
RAFAEL G. DEL CASTILLO
Attorney for Plaintiff
RICHARD DICRESCENZO

## **JURY TRIAL DEMAND ENDORSEMENT**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff

Richard DiCrescenzo demands trial by jury on all issues so triable in the above-

entitled action.

Dated:  Honolulu, Hawai`i, January 15, 2015

_____

RAFAEL G. DEL CASTILLO

Attorney for Plaintiff
RICHARD DICRESCENZO