IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| RICHARD DICRESCENZO,<br><br>  Plaintiff,<br><br>vs.<br><br>UNITEDHEALTH GROUP<br>INCORPORATED,<br>UNITEDHEALTHCARE, INC.,<br>UNITEDHEALTHCARE<br>INSURANCE COMPANY, and JOHN<br>DOES 1-99; JANE DOES 1-99; DOE<br>ENTITIES 1-20; and DOE<br>GOVERNMENTAL UNITS 1-10,<br><br>  Defendants. | CIVIL NO. 15-00021 DKW-RLP<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART<br>DEFENDANTS' MOTIONS FOR<br>JUDGMENT ON THE PLEADINGS** |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTIONS FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Richard DiCrescenzo is a disabled and elderly Hawai'i resident

who requires skilled nursing and personal assistant services.  DiCrescenzo brings

claims against Defendants UnitedHealth Group, Incorporated, UnitedHealthcare,

Inc., and UnitedHealthcare Insurance Company (collectively "Defendants" or

"UHC") alleging that they continuously discriminated against him from September

2011 to the present while administering the State of Hawaii's QUEST Expanded

Access Medicaid program.  Dkt. No. 9 at 1-2 (Complaint ¶¶ 1-2).  DiCrescenzo

requests declaratory and injunctive relief, as well as monetary damages, for

Defendants' alleged violations of state and federal law.  Before the Court are the

following four motions:  (1) Defendants' Motion For Judgment On The Pleadings

As To Plaintiff's Allegations Relating to Medicare Benefits ("MJOP No. 1" [Dkt.

No. 27]); (2) Defendants' Motion For Judgment On The Pleadings For Count I (§

1983) ("MJOP No. 2" [Dkt. No. 28]); (3) Defendants' Motion For Judgment On

The Pleadings For Count IV In Part (Medicaid) ("MJOP No. 3" [Dkt. No. 29]); and

(4) Defendants' Motion For Judgment On The Pleadings For Counts II And III

(ADA and Rehabilitation Act) ("MJOP No. 4" [Dkt. No. 30]).

The Court GRANTS Defendants' MJOP No. 1 because DiCrescenzo has

failed to exhaust his administrative remedies as required by the Medicare Act's

administrative scheme.  The Court GRANTS Defendants' MJOP No. 2 because

DiCrescenzo has failed to allege facts sufficient to treat Defendants as state actors.

However, the Court permits DiCrescenzo until October 2, 2015 to amend his

Complaint as to the Section 1983 claim alleged in Count I.  The Court DENIES

Defendants' MJOP No. 3 as MOOT based on DiCrescenzo's admission that he is

not alleging any claims under 42 U.S.C. § 1396a(a)(17).  Lastly, the Court

GRANTS Defendants' MJOP No. 4 because DiCrescenzo has failed to state a

prima facie claim under Title III of the Americans with Disabilities Act ("ADA")

or under the Rehabilitation Act.

## BACKGROUND

### I.   Factual Summary[1]

DiCrescenzo suffered grievous injuries, including severe traumatic brain

injury, in 1979 after being struck by a drunk driver.  Complaint ¶ 9.  Following the

1979 crash, DiCrescenzo was deemed fully disabled within the meaning of 29

U.S.C. § 705, 42 U.S.C. § 12102, and 42 U.S.C. §§ 415, 421.  Complaint ¶ 10.

DiCrescenzo is eligible for coverage under both Medicare and the State of

Hawaii's Medicaid Plan.  Complaint ¶ 11.

Prior to February 2009, DiCrescenzo received services that the State of

Hawai'i Department of Human Services ("Department") had determined were the

minimum medically necessary to ensure his personal safety and independence.

Complaint ¶ 44.  These services included:  (1) skilled nursing services for

medication management; and (2) personal assistants to maintain DiCrescenzo's

apartment in a hygienic state and to escort him to the pharmacy, the grocery store,

and doctor's appointments.  Complaint ¶¶ 43-44.

In February 2009, UHC contracted with the State to provide or arrange

medical assistance for aged, blind, and disabled Medicaid beneficiaries and for

---

[1]The following alleged facts, all derived from DiCrescenzo's Complaint, are deemed true for purposes of the motions before the Court.

Medicare-Medicaid ("dual eligible") beneficiaries who were also enrolled in UHC's Medicare Advantage plan. Complaint ¶ 16. Following DiCrescenzo's enrollment with UHC, UHC continued to provide DiCrescenzo with personal assistance services consistent with what he had been previously provided under the State's fee-for-service program. Complaint ¶ 45.

In 2010, DiCrescenzo suffered a second brain injury, which worsened his functional disabilities. Complaint ¶ 47. DiCrescenzo's treating providers recommended, and UHC initially provided, 13 hours per week of personal assistance services (Level I). Complaint ¶ 49. In September 2011, however, UHC terminated this coverage, despite no change in DiCrescenzo's physical condition or enrollment status. Complaint ¶ 51. UHC continued to refuse this coverage from September 2011 until April 20, 2012, causing various types of hardship on DiCrescenzo. On April 20, 2012, UHC reinstated a few hours per week of personal assistance services (Level I). Complaint ¶ 61. UHC, however, has yet to restore the 13 hours per week of personal assistance services that Plaintiff seeks and has denied and/or delayed reimbursement for expenses incurred by DiCrescenzo as a result of the continuing reduction of personal assistance services. Complaint ¶¶ 92-94.

In addition, DiCrescenzo alleges that UHC failed to arrange for medically necessary services, such as eyeglasses, which DiCrescenzo's ophthalmologist ordered on September 16, 2014.  Complaint ¶¶ 92, 208.

## II.   **Procedural History**

On January 20, 2015, DiCrescenzo filed a Complaint for Declaratory and Injunctive Relief, and for Compensatory and Punitive Damages ("Complaint"), asserting various federal and state claims related to UHC's alleged discrimination in arranging for personal assistance.  Dkt. No. 9 ("Complaint").  Count I alleges a violation of Civil Rights under the Medicaid Act, 42 U.S.C. § 1983; Count II alleges a violation of the ADA; Count III alleges a violation of Section 504 of the Rehabilitation Act of 1973; Count IV alleges a violation of the Medicaid statute and regulations; Count V alleges a violation of Chapter 489 of the Hawai'i Revised Statutes (HRS); Count VI alleges the tort of bad faith; Count VII alleges negligent infliction of emotional distress; Count VIII alleges intentional infliction of emotional distress; and Count IX alleges punitive damages.

On May 13, 2015, UHC filed the aforementioned four motions for judgment on the pleadings.  Dkt. Nos. 27-30.  The Court held a hearing on all four motions on June 26, 2015.  Dkt. No. 43.

## STANDARD OF REVIEW

### I.  Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) permits parties to move for judgment

on the pleadings after the pleadings are closed.  Fed. R. Civ. P. 12(c).  "Analysis

under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6)

because, under both rules, 'a court must determine whether the facts alleged in the

complaint, taken as true, entitle the plaintiff to a legal remedy.'"  *Chavez v. United*

*States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Brooks v. Dunlop Mfg. Inc.*,

No. 10-04341 CRB, 2011 WL 6140912, at *3 (N.D. Cal. Dec. 9, 2011)).

For a Rule 12(c) motion, the allegations of the nonmoving party are accepted

as true, while the contradicting allegations of the moving party are assumed to be

false.  *See MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir.

2006).  "The Court inquires whether the complaint at issue contains 'sufficient

factual matter, accepted as true, to state a claim of relief that is plausible on its

face.'"  *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Therefore, "'[a] judgment on the

pleadings is properly granted when, taking all the allegations in the non-moving

party's pleadings as true, the moving party is entitled to judgment as a matter of

law.'"  *Marshall Naify Revocable Trust v. United States*, 672 F.3d 620, 623 (9th

Cir. 2012) (quoting *Fajardo v. Cnty. of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999)).

# **DISCUSSION**

Presently before the Court are Defendants' MJOP Nos. 1, 2, 3, and 4.  The Court considers each in turn.

## I.   **MJOP No. 1 [Dkt. No. 27]:  Allegations Relating to Medicare Benefits**

The dispositive issue in MJOP No. 1 is whether DiCrescenzo's claims are subject to the exclusive review provisions of the Medicare Act.  DiCrescenzo clarified in his opposition brief that "[t]he only benefit [that underlies his claims] which was arguably a Medicare benefit . . .  was [his] eyeglasses."  Dkt. No. 32 at 4.  As such, MJOP No. 1 primarily relates to Count VI, which alleges the tort of bad faith.  *See* Complaint ¶ 213 ("Defendants have continued their bad faith conduct towards Plaintiff, denying coverage of . . . eyeglasses his treating ophthalmologist ordered").

UHC argues that "[t]o the extent [DiCrescenzo's] claims are based upon the alleged delay, denial, or mishandling of a claim for benefits with respect to his *eyeglasses*, those claims 'arise under' the Medicare laws and must go through the mandatory administrative channels."  Dkt. No. 38 at 5.

The Court agrees.  Insofar as DiCrescenzo's claims relate to the delay or mishandling of the coordination of benefits with respect to his eyeglasses, they are inextricably intertwined with a Medicare benefits decision, and DiCrescenzo must first present them to the Secretary of Health and Human Services (the "Secretary").

7

That has not occurred.  DiCrescenzo has not alleged presentment, nor has he represented that he has even attempted it.  As such, the Court grants UHC's MJOP No. 1.

### A.    Medicare Exhaustion

The Medicare Act is part of the Social Security Act, which establishes a federal subsidized health insurance program for elderly and certain disabled persons.  42 U.S.C. §§ 1395 *et seq*.  To ensure the orderly and efficient function of this enormous federal program, Congress has entrusted its administration to the Secretary.  42 U.S.C. § 1395hh.

The administrative procedure set forth in the Medicare Act is mandatory for all claims "arising under" the Act:

> The third sentence of 42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review for all "claim[s] arising under" the Medicare Act.  Thus, to be true to the language of the statute, the inquiry in determining whether § 405(h) bars federal-question jurisdiction must be whether the claim "arises under" the Act . . . .

*Heckler v. Ringer*, 466 U.S. 602, 614-15 (1984) (footnote and internal citations omitted).

A claim "arises under" the Medicare Act if "both the standing and the substantive basis for the presentation" of the claim is the Medicare Act, or if the claim is "inextricably intertwined" with a claim for Medicare benefits.  *Heckler*,

8

466 U.S. at 606, 624.  "Judicial review of claims arising under the Medicare Act is available only after the Secretary renders a 'final decision' on the claim, in the same manner as is provided in 42 U.S.C. § 405(g) for old age and disability claims arising under Title II of the Social Security Act."  *Id.* at 605 (footnote omitted).

In Count VI, relating to the tort of bad faith, DiCrescenzo claims, in relevant part, that "Defendants have continued their bad faith conduct towards [DiCrescenzo], denying coverage of, or authorization for dispensing of, eyeglasses his treating ophthalmologist ordered on September 16, 2014."  Complaint ¶ 213. Critically, DiCrescenzo's ability to prevail on this state law cause of action inevitably turns upon a determination that DiCrescenzo was entitled to a Medicare benefit, *i.e.*, a new pair of eyeglasses, in the first place, and that UHC had no right to deny such a benefit because it was "reasonable and necessary" for treatment of DiCrescenzo's condition.  *See Heckler*, 466 at 610-11.  The consequential damages sought by DiCrescenzo are similarly dependent upon such a determination.  That being the case, DiCrescenzo's claim is "inextricably intertwined" with a Medicare benefits determination and is subject to Medicare's administrative review process.

As the cases instruct, it is irrelevant that DiCrescenzo artfully avoids referring to a claim for reimbursement of sums he expended to obtain the services otherwise covered under Medicare.  *See Heckler*, 466 U.S. at 615 ("It is of no importance that respondents . . . sought only declaratory and injunctive relief and

9

not an actual award or benefits as well"); *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 14 (2000) (refusing to "accept a distinction that limits the scope of § 405(h) to claims for monetary benefits").   Nor does it matter that Count VI is state law-based.  *See Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1114 (9th Cir. 2003) (recognizing that a claim may arise under the Medicare Act even though it also arises under some other law).

DiCrescenzo's extensive reliance on *Ardary v. Aetna Health Plans of Cal., Inc.*, 98 F.3d 496 (9th Cir. 1996), is misplaced because the claim at issue is not "wholly collateral" to a claim for benefits, as was the case with the wrongful death claim in *Ardary*.  Unlike in *Ardary*, this Court cannot conclude that the injury complained about—failing to coordinate DiCrescenzo's Medicare and Medicaid coverage—could not be redressed by the Medicare Act's administrative review process.  *See id.* at 500; *Uhm v. Humana Inc.*, 620 F.3d 1134, 1142 (9th Cir. 2010) (explaining that in *Ardary*, exhaustion was not required because the lawsuit "was '*at bottom* not seeking to recover *benefits*' and because the injury complained about could not have been redressed at all via the Medicare Act's administrative review process" (quoting *Ardary*, 98 F.3d at 500)).

Accordingly, the administrative procedure set forth in the Medicare Act applies and administrative remedies must be exhausted before DiCrescenzo may bring his Medicare claims to federal court.

**B.** **Waiver**

DiCrescenzo contends that no purpose would be served by requiring exhaustion, and that the exhaustion requirement should be waived.  Dkt. No. 32 at 20-25.

Even if a claim "arises under" the Medicare Act, a plaintiff may prove that, under the specific facts of the case, exhaustion is unnecessary.  "[T]he exhaustion requirement of § 405(g) consists of a nonwaivable requirement that a claim for benefits shall have been presented to the Secretary, and a waivable requirement that the administrative remedies prescribed by the Secretary be pursued fully by the claimant."  *Heckler*, 466 U.S. at 617 (citations and internal quotation marks omitted).  The presentment requirement is jurisdictional and nonwaivable.  *See Johnson v. Shalala*, 2 F.3d 918, 921 (9th Cir. 1993) ("The presentment requirement is jurisdictional, and therefore cannot be waived by the Secretary or the courts."). "[I]t assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts[.]"  *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000).

DiCrescenzo asserts in his opposition that his "eyeglass claim was duly presented for consideration on his behalf by his ophthalmologist, as 42 U.S.C. § 405(g) requires, and was denied as a Medicare benefit, on information and belief

because Medicare supposedly covers only one pair of eyeglasses per year." Dkt. No. 32 at 5. This assertion, however, relates to DiCrescenzo's ophthalmologist presenting the eyeglass claim to UHC, not the Secretary. It is undisputed that DiCrescenzo's eyeglass claim has never been presented to the Secretary, and the Secretary has therefore had no opportunity to evaluate it. "[DiCrescenzo's] assertion that no purpose would be served by requiring exhaustion ignores the Secretary's right to correct any problems in the coordination of benefits between Medicare and Medicaid plans before such issues are addressed by the courts." Dkt. No. 38 at 25. Because DiCrescenzo has admittedly failed to comply with a non-waivable, jurisdictional presentment requirement, there is no basis to allow waiver.

## II.    MJOP No. 2 [Dkt. No. 28]:  Claims Alleged Under Section 1983 (Count I)

In Count I, DiCrescenzo alleges a violation of civil rights under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege two essential elements:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). UHC focuses on the second element of the test, arguing that as a Managed Care Organization, it is not a state actor. UHC further argues that DiCrescenzo fails to allege sufficient facts that might warrant treating UHC as a state actor, as DiCrescenzo's sole reliance on UHC's contract with the State is an

12

untenable theory.  DiCrescenzo responds by asserting that the state action inquiry is fact-intensive and, at this early stage in the litigation, he has alleged facts sufficient to state a plausible claim.

The U.S. Supreme Court has acknowledged that "no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government."  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295-96 (2001).  Instead, the Court has recognized that:

> Our cases have identified a host of facts that can bear on the fairness of such an attribution.  We have, for example, held that a challenged activity may be state action when it results from the State's exercise of "coercive power," *Blum*, 457 U.S., at 1004, 102 S. Ct. 2777, when the State provides "significant encouragement, either overt or covert," *ibid.*, or when a private actor operates as a "willful participant in joint activity with the State or its agents," *Lugar*, *supra*, at 941, 102 S. Ct. 2744 (internal quotation marks omitted).  We have treated a nominally private entity as a state actor when it is controlled by an "agency of the State," *Pennsylvania v. Board of Directors of City Trusts of Philadelphia*, 353 U.S. 230, 231, 77 S. Ct. 806, 1 L.Ed.2d 792 (1957) (per curiam), when it has been delegated a public function by the State, *cf.*, *e.g.*, *West v. Atkins*, *supra*, at 56, 108 S. Ct. 2250; *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 627–628, 111 S. Ct. 2077, 114 L.Ed.2d 660 (1991), when it is "entwined with governmental policies," or when government is "entwined in [its] management or control," *Evans v. Newton*, 382 U.S. 296, 299, 301, 86 S. Ct. 486, 15 L.Ed.2d 373 (1966).

*Id.* at 296.

UHC contends that "courts have unanimously held that a private health plan's status as a Managed Care Organization does not convert it into a state actor." Dkt. No. 28-1 at 2. Although this may be true, UHC has failed to reference any cases brought by Medicaid beneficiaries holding that Medicaid Managed Care Organizations, as a matter of law, can never be state actors. This Court is unaware of any such case, and another court in this district concluded the same after analyzing the same issue and arguments raised by UHC. *See Quinones v. UnitedHealth Group Inc.*, Civil No. 14-00497 LEK-RLP, 2015 WL 4523499, at *3-4 (concluding that "[t]he court is not persuaded that there is a per se rule precluding a finding of state action here").

This conclusion does not end the inquiry. DiCrescenzo must still allege sufficient facts supporting the treatment of UHC as a state actor. To do this, DiCrescenzo's Complaint relies heavily, if not solely, on UHC's contract with the State. DiCrescenzo contends that "Defendants were the representatives or agents of the United Defendants acting unlawfully under the United Defendants' contract with the State of Hawaiʻi to provide or arrange medical assistance for [DiCrescenzo] and the aged, blind, and disabled Medicaid beneficiaries and dual eligible enrolled with [UHC], and therefore acted wrongfully and unlawfully under color of law." Complaint ¶ 161.

As UHC correctly points out, "merely contracting with the government, receiving government funding, and following government regulation – even if extensive and detailed – is not sufficient to establish state action." Dkt. No. 39 at 14. *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974) ("The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State...[n]or does the fact that the regulation is extensive and detailed..."); *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982) (holding that "[a]cts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts"). Here, DiCrescenzo has not alleged facts showing that the State "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (internal quotation marks and citation omitted). Put another way, DiCrescenzo has failed to allege facts establishing sufficient control by the State over the specific UHC conduct of which he complains.

Accordingly, while the Court grants Defendants' MJOP No. 2, because necessary facts indicating that UHC was a state actor may exist, the Court does so with leave to amend.

III.  **MJOP No. 3 [Dkt. No. 29]:  Claims Alleged Under 42 U.S.C. §
1396a(a)(17)**

In Count IV, DiCrescenzo alleges a violation of the Medicaid statute and

regulations.  UHC requests judgment on the pleadings on Count IV "to the extent it

relies upon subsection (a)(17) [of the Medicaid Act, 42 U.S.C. §§ 1396a, *et seq*],

*i.e.*, his allegations that [Defendants] failed to maintain 'reasonable standards' in

[their] procedures." Dkt. No. 29-1 at 2.  DiCrescenzo contends that UHC has

misconstrued the allegations that he brings under Count IV and states that he has

not alleged and did not intend to allege a claim under subsection (a)(17).  *See* Dkt.

No. 34.

Based on DiCrescenzo's admission, the Court finds that Count IV does not

assert a claim under 42 U.S.C. § 1396a(a)(17).   Accordingly, Defendants' MJOP

No. 3 is denied as MOOT.

IV.  **MJOP No. 4 [Dkt. No. 30]:  Claims Alleged Under Title III of the ADA
and Section 504 of the Rehabilitation Act (Counts II & III)**

UHC moves for judgment on the pleadings on Counts II and III of

DiCrescenzo's Complaint.  The Court will discuss each in turn.

A.  **Count II:  Violation of Title III of the ADA**

In Count II, DiCrescenzo alleges that UHC violated Title III of the ADA by

withholding from, reducing, refusing, or failing to arrange personal assistance

(Level I) and skilled nursing services at various times since September 2011.

Complaint ¶171.  UHC contends that this claim fails as a matter of law under the "safe harbor" provision for insurers administering benefit plans, 42 U.S.C. §12201(c).  Dkt. No. 30-1 at 14-18.  UHC further contends that this claim fails as a matter of law because UHC is not a "public accommodation"  Dkt. No. 30-1 at 19-20.  The Court agrees that "UHC's administration of health plan benefits does not fall within the scope of Title III of the ADA because the Ninth Circuit has concluded that a health plan is not a 'public accommodation.'"  Dkt. No. 30-1 at 19.[2]

The ADA generally prohibits discrimination against the disabled by employers, public entities, and by operators of public accommodations.  *See* 42 U.S.C. §§ 12101-12213.  Title III of the ADA provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of *public accommodation*.

42 U.S.C. § 12182(a) (emphasis added).  "Public accommodation" is defined as:

> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;

---

[2]Because DiCrescenzo's ADA claim fails on this basis, the Court need not and does not reach a determination of whether the "safe harbor" provision applies.

(B) a restaurant, bar, or other establishment serving food or drink;

(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(D) an auditorium, convention center, lecture hall, or other place of public gathering;

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, *insurance office*, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7) (emphasis added).

In *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir. 2000), the Ninth Circuit concluded that a health plan is not such a "public accommodation." The court stated:

> The question then whether an insurance company, like UNUM, that administers an employer-provided disability plan is a "place of public accommodation." Certainly, an insurance office is a place where the public generally has access. But this case is not about such matters as ramps and elevators so that disabled people can get to the office. The dispute in this case, over terms of a contract that the insurer markets through an employer, is not what Congress addressed in the public accommodation provisions.

*Weyer*, 198 F.3d at 1114.

In the instant case, the gravamen of DiCrescenzo's claims is UHC's benefit decisions under the terms of his health plan. Administration of these benefits does not relate to a physical place, nor does DiCrescenzo cite to any physical public accommodation to support his invocation of Title III. Indeed, UHC is not a place of public accommodation, and thus, cannot have violated Title III of the ADA pursuant to *Weyer*. *See, e.g., Larson v. Liberty Mut. Fire Ins. Co.*, Civil No. 09-00308 SOM/BMK, 2010 WL 520630, at *5 (D. Haw. Feb. 11, 2010) (dismissing Title III claims on the basis that "[j]ust as *Weyer* held that an insurance company administering an employer-provided disability policy is not a 'place of public accommodation' under Title III, . . . Liberty Mutual is not a 'public accommodation'"); *Nielsen v. Unum Life Ins. Co. of Amer.*, 58 F. Supp. 3d 1152,

1162 (W.D. Wash. 2014) ("The Ninth Circuit's decision in *Weyer* thus requires dismissal of Plaintiff's ADA . . . claims.  Unum, [a life insurance company], is not a place of public accommodation and thus cannot have violated . . . Title III of the ADA . . . .").  Because DiCrescenzo's ADA claim is not legally cognizable pursuant to the Ninth Circuit's decision in *Weyer*, the Court dismisses Count II.

### B.     Count III:  Violation of the Rehabilitation Act

In Count III, DiCrescenzo alleges a violation of the Rehabilitation Act. Section 504 of the Rehabilitation Act prohibits discrimination against an individual solely by reason of his or her disability by entities who receive federal funding, including private organizations.  29 U.S.C. § 794(b)(3).  Section 504, like the ADA, ensures that disabled individuals are not denied benefits or participation in programs "solely by reasons of her or his disability."  29 U.S.C. § 794(a).  Put another way, Section 504 seeks to ensure that disabled individuals receive the same treatment as those who are not disabled.  *Chandler v. City of Dallas*, 2 F.3d 1385, 1389-90 (5th Cir. 1993).

A *prima facie* claim under Section 504 of the Rehabilitation Act requires a plaintiff to allege the following four elements:  (1) that he is a handicapped individual under the Act; (2) that he is "otherwise qualified" for the benefit sought; (3) that he was discriminated against solely by reason of his handicap; and (4) that

the program or activity in question receives federal financial assistance.  *Dempsey v. Ladd*, 840 F.2d 638, 640 (9th Cir. 1987).

UHC seeks to dismiss Count III in reliance on *Alexander v. Choate*, 469 U.S. 287, 303 (1985).  In *Choate*, Medicaid recipients challenged Tennessee's proposal to reduce the number of inpatient hospital days covered by the state Medicaid program, arguing that the proposed change would have a disproportionate effect on the handicapped.  *Choate*, 469 U.S. at 290.  The Court concluded that the plaintiffs failed to state a claim under the Rehabilitation Act because the reduction would not deny plaintiffs "meaningful access to Tennessee Medicaid services or exclude them from services."  *Id.* at 302.  The Court explained:

> To the extent respondents further suggest that their greater need for prolonged inpatient care means that, to provide meaningful access to Medicaid services, Tennessee must single out the handicapped for more than 14 days of coverage, the suggestion is simply unsound.  At base, such a suggestion must rest on the notion that the benefit provided through state Medicaid programs is the amorphous objective of "adequate health care." *But Medicaid programs do not guarantee that each recipient will receive that level of health care precisely tailored to his or her particular needs.*  Instead, the benefit provided through Medicaid is a particular package of health care services, such as 14 days of inpatient coverage.  That package of services has the general aim of assuring that individuals will receive necessary medical care, but the benefit provided remains the individual services offered-not "adequate health care."

*Id.* at 302-03 (emphasis added).

21

As such, *Choate* essentially directs that Section 504 does not provide an avenue for Medicaid recipients to claim they did not receive "a level of health care precisely tailored to his or her particular needs." *Id.* at 303. Rather, Section 504 assures that both disabled and non-disabled individuals will have equal access to the plan's health benefits package. Here, DiCrescenzo's allegations do not relate to equal access to a particular health benefits package. To the contrary, DiCrescenzo expressly alleges that "[t]he discrimination which is the subject of Plaintiff's Complaint occurred not as part of plan design . . . but as a result of discriminatory choices in how the benefits were administered . . ." Complaint ¶ 3. DiCrescenzo's theory of relief, in other words, is not related to plan design. Because DiCrescenzo's claim that he was discriminated against based on the precise level of care he requested pursuant to that benefit plan is not a cognizable claim under Section 504, the Court dismisses Count III.

## **CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS Defendants' MJOP Nos. 1 [Dkt. No. 27], 2 [Dkt. No. 28], and 4 [Dkt. No. 30]. Defendants' MJOP

No. 3 [Dkt. No. 29] is DENIED as MOOT.  DiCrescenzo is granted until

October 2, 2015 to file an amended complaint in accordance with this order.

IT IS SO ORDERED.

DATED:  September 16, 2015 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

DiCrescenzo v. UnitedHealth Group, Inc., et. al; CV 15-00021 DKW-RLP;
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTIONS FOR JUDGMENT ON THE PLEADINGS