IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| RICHARD DICRESCENZO, | CIVIL NO. 15-00021 DKW-RLP |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S AMENDED COMPLAINT** |
| vs. | |
| UNITEDHEALTH GROUP INCORPORATED, UNITEDHEALTHCARE, INC., UNITEDHEALTHCARE INSURANCE COMPANY, and JOHN DOES 1-99; JANE DOES 1-99; DOE ENTITIES 1-20; and DOE GOVERNMENTAL UNITS 1-10, | |
| Defendants. | |

**ORDER GRANTING DEFENDANTS' MOTION FOR
PARTIAL DISMISSAL OF PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff Richard DiCrescenzo is a disabled and elderly Hawaiʻi resident

who requires skilled nursing and personal assistant services.  The gravamen of

DiCrescenzo's Amended Complaint is that Defendants UnitedHealth Group,

Incorporated, UnitedHealthcare, Inc., and UnitedHealthcare Insurance Company

(collectively, "Defendants" or "UHC") have failed to consistently provide 13 hours

per week of personal assistant services, which is the amount that DiCrescenzo's

treating providers have repeatedly ordered and which is a covered benefit under the State of Hawaii's Medicaid Plan and QUEST Expanded Access Program.  Dkt. No. 45.  Count I of the Amended Complaint purports to assert a claim under 42 U.S.C. § 1983 for alleged violations of the Medicaid Act.  Dkt. No. 45 at 33-36.

Before the Court is Defendants' Motion For Partial Dismissal of Plaintiff's Amended Complaint.  Dkt. No. 46.  Because DiCrescenzo has failed to allege facts linking the State to Defendants' decision to provide DiCrescenzo with less than 13 hours per week of personal assistant services, the Court GRANTS Defendants' Motion [Dkt. No. 46] and DISMISSES Count I.

## BACKGROUND

## I.   Factual Summary[1]

DiCrescenzo suffered grievous injuries, including severe traumatic brain injury, in 1979 after being struck by a drunk driver.  Am. Compl. ¶ 15.  Following the 1979 crash, DiCrescenzo was deemed fully disabled within the meaning of 29 U.S.C. § 705, 42 U.S.C. § 12102, and 42 U.S.C. §§ 416, 421.  Am. Compl. ¶ 16. DiCrescenzo is eligible for coverage under the State of Hawaii's Medicaid Plan. Am. Compl. ¶ 17.

---

[1]The following alleged facts, all derived from DiCrescenzo's Amended Complaint, are deemed true solely for purposes of the Motion before the Court.

Prior to February 2009, DiCrescenzo received services that the State of Hawaiʻi Department of Human Services ("Department" or "DHS")[2] had determined were the minimum medically necessary to ensure his personal safety and independence. Am. Compl. ¶ 43. These services included: (1) skilled nursing services for medication management; and (2) personal assistants to maintain DiCrescenzo's apartment in a hygienic state and to escort him to the pharmacy, the grocery store, and doctor's appointments. Am. Compl. ¶ 43.

In February 2009, UHC contracted with DHS to provide or arrange medical assistance for aged, blind, and disabled Medicaid beneficiaries. Am. Compl. ¶ 21. Following DiCrescenzo's enrollment with UHC, UHC continued to provide DiCrescenzo with personal assistance services consistent with what he had been previously provided under the State's fee-for-service program. Am. Compl. ¶ 44.

In 2010, DiCrescenzo suffered a second brain injury, which worsened his functional disabilities. Am. Compl. ¶ 45. DiCrescenzo's treating providers recommended, and UHC initially provided, 13 hours per week of personal assistance services (Level I). Am. Compl. ¶¶ 47, 49. In September 2011, however, UHC terminated this coverage, despite no change in DiCrescenzo's physical condition or enrollment status. Am. Compl. ¶ 49. UHC continued to refuse this

---

[2]DHS is the designated State of Hawaiʻi agency responsible for administering the Medicaid program and arranging or providing medical assistance to Medicaid beneficiaries.

coverage from September 2011 until April 20, 2012, causing various types of hardship on DiCrescenzo.  Am. Compl. ¶ 53.

Since April 20, 2012, UHC has reinstated some of the personal assistant services hours to which DiCrescenzo claims entitlement, but has fallen short of providing the minimal assistance of 13 hours per week that DiCrescenzo's treating providers have repeatedly ordered he receive.  Am. Compl. ¶¶ 47, 59, 65, 72, 82. At a September 16, 2015 assessment of DiCrescenzo's needs, UHC confirmed that DiCrescenzo requires at least 10 hours per week of personal services and 2 hours per week of face-to-face skilled nursing services.  Am. Compl. ¶¶ 7, 102.  UHC, however, has not provided this amount or restored the 13 hours per week of personal assistance services that DiCrescenzo seeks and has denied and/or delayed reimbursement for expenses incurred by DiCrescenzo as a result of the continuing reduction of personal assistance services.  Am. Compl. ¶¶ 7, 73, 81, 103.

## II.   <u>Procedural History</u>

On January 20, 2015, DiCrescenzo filed a Complaint for Declaratory and Injunctive Relief, and for Compensatory and Punitive Damages ("Complaint"), asserting various federal and state claims related to UHC's provision of personal assistance services.  Dkt. No. 9.  Relevant to the instant Motion, Count I alleged a violation of Civil Rights under the Medicaid Act, 42 U.S.C. § 1983.

4

On May 13, 2015, UHC filed four motions for judgment on the pleadings, including a Motion for Judgment on the Pleadings for Count I (§1983) ("MJOP"). Dkt. No. 28.  On September 16, 2015, the Court granted, among other things, Defendants' MJOP because DiCrescenzo failed to allege facts sufficient to treat Defendants as state actors.  Dkt. No. 44 at 15.  In granting Defendants' MJOP, the Court explained in relevant part that "DiCrescenzo has failed to allege facts establishing sufficient control by the State over the specific UHC conduct of which he complains."  Dkt. No. 44 at 15.  The Court permitted DiCrescenzo to amend his Complaint as to the Section 1983 claim alleged in Count I.  Dkt. No. 44 at 15.

On October 1, 2015, DiCrescenzo filed an Amended Complaint for Declaratory and Injunctive Relief, and For Compensatory and Punitive Damages ("Amended Complaint").  Dkt. No. 45.  UHC moved for dismissal of Count I (§ 1983) of DiCrescenzo's Amended Complaint.  Dkt. No. 46.  The Court held a hearing on UHC's Motion on December 1, 2015.  Dkt. No. 52.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for failure to state a claim upon which relief can be granted.  Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

5

556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by Rule 8(a)(2).  *Id.* at 679.

## DISCUSSION

In Count I, DiCrescenzo alleges a violation of civil rights under 42 U.S.C. §1983.  Dkt. No. 45 at 33.  "To state a claim under § 1983, a plaintiff must allege two essential elements:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).  In focusing on the second element of the test,

6

UHC contends that the factual allegations, yet again, fail to sufficiently identify state action.  The Court agrees.

As the Court acknowledged in its September 16, 2015 Order, "'no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government.'"  Dkt. No. 44 at 13 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295-96 (2001)).  Instead, courts have used different factors or tests to identify what constitutes state action, including the following three that DiCrescenzo contends have been satisfied here:  (1) joint action, (2) governmental compulsion or coercion, and (3) governmental nexus.  Dkt. No. 49 at 5 (citing *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (quoting *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835-36 (1999)).  As set forth below, the factual allegations once again fail to live up to their billing, regardless of the test employed.

## I.    <u>Joint Action Test</u>

Under the joint action test, the court "consider[s] whether the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the *challenged activity*.  This occurs

when the state knowingly accepts the benefits derived from *unconstitutional*

*behavior*." *Kirtley*, 326 F.3d at1093 (9th Cir. 2003) (internal quotation marks and

citation omitted) (emphases added).

Applying the test here, the Court finds that the allegations are insufficient to

state a claim for state action.  Once again, DiCrescenzo relies on UHC's status as a

State contractor in arguing that the benefits the State receives from UHC's actions

as a contractor are sufficient to pass the joint action test for state action.  *See e.g.*,

Dkt. No. 49 at 7-11 (DHS "has saved money and health care costs" through its

contract with UHC).  Indeed, DiCrescenzo discusses at length the benefits of DHS

contracting with UHC which "flow to the State."  Dkt. No. 49 at 7.  Although

DiCrescenzo's discussion about joint action generally discusses the

interdependence between DHS and UHC, DiCrescenzo fails to plead sufficient

facts to link the State to UHC's individual benefit decisions as to DiCrescenzo.  As

previously discussed in the Court's prior order, the fact that UHC operates under

contract with the State is not sufficient to transform its benefit decisions to state

action.  *See* Dkt. No. 44 at 15 (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345,

350 (1974) ("The mere fact that a business is subject to state regulation does not by

itself convert its action into that of the State...[n]or does the fact that the regulation

is extensive and detailed …"); *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982)

(holding that "[a]cts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts")).

Accordingly, the Court finds that DiCrescenzo has failed to satisfy the joint action test.

## II.  **Governmental Compulsion-or-Coercion Test**

Under the compulsion or coercion test, the Court considers whether the "coercive influence or 'significant encouragement' of the state effectively converts a private action into a government action." *Kirtley*, 326 F.3d at 1094 (citation omitted).  As with the prior test, the focus is conduct-specific.

DiCrescenzo's reliance on this test is similarly flawed because the Amended Complaint does not contain any allegations that the State coerced or encouraged UHC to deny DiCrescenzo's specific medical benefit requests at issue here.  In an effort to display the requisite coercive power, the Amended Complaint provides:

> 153.   DHS nonetheless retained coercive power over United Defendants' activities governing the manner in which they carried out the State of Hawaii's Medicaid obligations, imposing significant encompassing requirements similar in specificity to requirements a supervisor would impose on a functionary to further required action rather than merely authorizing it, including:
>
> a.      Choosing which beneficiaries are assigned to United Defendants;

9

b. Minimum staffing in numbers based on the number of beneficiaries assigned;

c. Specific staff roles or assignments, such as call center, customer service, and "service coordinators";

d. Provider network requirements, both number and type;

e. Operational requirements, including specifically periodic in-home assessments of beneficiaries by service coordinators accompanied by a DHS-employed social worker;

f. DHS-designed needs assessment instruments which must be completed;

g. DHS-mandated scoring methodologies of the assessment instruments;

h. DHS-designed benefits;

i. DHS-designed reports;

j. DHS-mandated database requirements;

k. DHS continuous monitoring of all data collected on beneficiaries, including the utilization data;

l. Mandated compliance with all State and Federal laws and regulations;

m. Compliance with frequent DHS-generated amendments to requirements.

n. DHS-mandated due process requirements for beneficiaries;

   o. DHS-mandated member grievance processes and reporting; and

   p. DHS-final say on any exceptions to mandated benefit coverage by United Defendants.

Am. Compl. ¶ 153.

  DiCrescenzo contends that the foregoing allegations demonstrate that "DHS compels Defendants to maintain certain administrative arrangements directly involving Defendants' relations with all Medicaid beneficiaries." Dkt. No. 49 at 15. DiCrescenzo further contends that "DHS has commanded a particular result for [home and community based services ("HCBS")] beneficiaries such as [himself]," including dictating the eligibility for HCBS, staffing for HCBS, and the "DHS-designed assessment instruments[.]" Dkt. No. 49 at 16. This type of "government compulsion or coercion," however, does not relate to UHC's medical benefit decisions as they relate to DiCrescenzo. In other words, even DiCrescenzo's long list of coercive acts in Paragraph 153 of the Amended Complaint, and elsewhere, do not demonstrate that DHS compelled UHC to provide DiCrescenzo with less than 13 hours of personal assistant services, the number that DiCrescenzo's medical providers determined were necessary and that DiCrescenzo seeks to restore.

Accordingly, the Court finds DiCrescenzo has failed to satisfy the governmental compulsion-or-coercion test.

## III.   Governmental Nexus Test

"Under the governmental nexus test, a private party acts under color of state law if there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Ohno v. Yasuma*, 723 F.3d 984, 996 n.13 (9th Cir. 2013) (citation and internal quotations marks omitted).  Similar to the prior tests, "[w]hether such a close nexus exists . . . depends on whether the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (internal quotation marks and citation omitted)

Applying the test here, the Court similarly finds that the allegations are insufficient to state a claim for state action.  As previously discussed, the specific conduct of which DiCrescenzo complains is UHC's failure to provide him with 13 hours of personal assistant services to which he claims he is entitled.  The issue then is whether UHC's decision to refrain from providing DiCrescenzo with the requisite hours "may be fairly attributable to the State so as to subject [UHC] to the

12

constraints of the Fourteenth Amendment." *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 51.   As to this *specific* decision, DiCrescenzo has not alleged facts to show that the State "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* (internal quotation marks and citation omitted).   Indeed, DiCrescenzo has not alleged any facts demonstrating that the State was involved in the *specific* decision to provide DiCrescenzo with less hours than he requires. Accordingly, DiCrescenzo fails to state a claim under the nexus test.

In sum, DiCrescenzo has failed to allege facts supporting state action.   The Court has already provided DiCrescenzo with a second opportunity to support his Section 1983 clam with sufficient factual allegations.   Having again failed to plead the necessary facts, and having failed to advance any argument at the hearing that would support a finding of state action,[3] the Court concludes that DiCrescenzo is unable to fulfill any test for state action.   The Court thus GRANTS UHC's Motion For Partial Dismissal of Plaintiff's Amended Complaint and DISMISSES Count I without leave to amend.

---

[3]At the hearing, DiCrescenzo appeared to argue that the parties do not disagree on the number of hours DiCrescenzo requires, only the provision of the agreed-upon hours.   Even if the Court were to consider this argument, the same deficiencies would still exist.   Namely, the failure to allege facts linking the State to the specific conduct of which DiCrescenzo complains, *i.e.*, UHC's specific decisions with regard to his medical benefits.

## **CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS Defendants' Motion

For Partial Dismissal of Plaintiff's Amended Complaint [Dkt. No. 46].

IT IS SO ORDERED.

DATED:  December 23, 2015 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

DiCrescenzo v. UnitedHealth Group, Inc., et. al; CV 15-00021 DKW-RLP;
ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL DISMISSAL
OF PLAINTIFF'S AMENDED COMPLAINT